(No. 31312.—

THE CITY OF CHICAGO, Appellant, *vs.* THE WILLETT
COMPANY, Appellee.

*Opinion filed November 18, 1953.*

John J. Mortimer, Corporation Counsel, of Chicago, (L. Louis Karton, and Arthur Magid, of counsel,) for appellant.

Daley & Lynch, of Chicago, (Joseph A. Power, George J. Schaller, and Charles D. Snewind, of counsel,) for appellee.

Mr. Justice Daily delivered the opinion of the court:

At this time we are again concerned with the litigation considered by this court in *City of Chicago* v. *Willett Co.* 406 Ill. 286, and 409 Ill. 480. To summarize, the action began when the city filed a *quasi*-criminal complaint in the municipal court charging the company with violating chapter 163 of the Municipal Code of Chicago, in that it was engaging in the business of carter within the city without first having obtained and paid for a license which, the ordinance provided, was to be measured by the carrying capacity of the trucks employed by the company in such business. The trial court found for the company, holding that the application of the ordinance to the company's business would create an undue burden on interstate commerce. On a direct appeal that followed, we affirmed the judgment of the trial court and stated that while the ordinance was valid and the company's local business included within its scope, the evidence, which showed that Willett Company's trucks carried commingled cargoes to local and interstate destinations, disclosed that the ordinance ran afoul

of the Federal commerce clause in this case for the reason that the company's local and interstate activities were inseparable and that the company could not withdraw from one type of service without withdrawing from the other. (406 Ill. 286.) In a clarifying opinion, written at the request of the United States Supreme Court after it had granted a writ of *certiorari* to review our judgment, we reiterated our view that the ordinance was valid but, because of the resulting burden upon interstate commerce, could not be applied to Willett Company because the evidence showed its local and interstate activities to be inseparable. By a subsequent opinion, the high bench reversed our judgment holding that under the circumstances of the parties "* * * a tax of reasonable proportions such as the one in question not shown in fact to be a burden on interstate commerce, is not inconsistent with the Commerce Clause." (*City of Chicago* v. *Willett Co.* 344 U.S. 574, 97 L. ed. 333.) The same opinion remanded the cause to this court for proceedings not inconsistent with the views therein expressed and, inasmuch as the first opinion of this court did not consider all of the contentions relating to the validity of the ordinance under Illinois law, as distinguished from the Federal issue, the parties have renewed such contentions at this time.

Treating the previous judicial opinions in the cause as being restricted solely to a determination of whether the ordinance was repugnant to the Federal commerce clause, the company urges that the ordinance is not applicable to its carrier operations, the intent of the city being only to tax hauling done "within the city," and construes our former opinions as so holding. We think the contention ill-founded and that our previous decisions hold exactly to the contrary. Our decision that the ordinance was not applicable to the company's business was not based upon a limitation in the ordinance but clearly upon our view, since dispelled by the Supreme Court, of the inhibiting effect

of the commerce clause. If the interpretation now claimed by the company were indeed the construction adopted by this court, the question of the validity of the ordinance under the commerce clause would never have been reached, nor would the cause have been considered by the United States Supreme Court had the ordinance been construed as not applying to the Willett Company's situation.

Contention is also made that the ordinance is but a subterfuge to tax the personal property of the company under the pretext of levying an occupational tax and thus constitutes double taxation. The ordinance expressly states that the tax is levied upon persons engaged in the business of transporting freight in intra-city commerce and, even though the tax is measured by the carrying capacity of the company's trucks, both this court and the Federal court construed the tax as being an occupational tax that applied to the taxpayer's business rather than its property. This court has recognized on numerous occasions that there is a distinction between a property tax and the tax upon an occupation or the privilege of doing business, and has held that both may be levied without doing violence to the constitutional prohibition against double taxation. (*Harder's Fire Proof Storage and Van Co.* v. *City of Chicago,* 235 Ill. 58; *People* v. *Deep Rock Oil Corp.* 343 Ill. 388; *Bardon* v. *Nudelman,* 369 Ill. 214.) We find nothing in the occupational tax here involved which causes us to depart from the principle and reasoning of the cited cases.

Section 23-51 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1951, chap. 24, par. 23-51,) confers upon municipalities the express power to "license, tax and regulate" carters. Contending that this legislative grant of authority is to be strictly construed, the company contends that the ordinance is beyond the power authorized by the statute, for reason that it is purely a revenue-producing ordinance which makes no attempt to provide for regulation of the occupation. The company's theory is that the

word "and" in the phrase "license, tax and regulate" means "in addition to" and that under the authority granted it is incumbent upon a city to exercise the three powers in combination, or not at all. In other words, the company urges that the city must exercise all the powers granted to it, or it cannot exercise any of them. While recognizing that upon occasion the word "and" has been judicially construed as the company urges, we do not construe the legislative intent as requiring the same construction in this statute. Such a construction would lead to many absurd results, particularly in the field of regulations necessary in the interest of public health, safety and welfare. It can hardly be said that the legislature intended that every such regulation would be accompanied by a license and tax and, conversely, it cannot be said that a city's need for revenue and power to raise it must, in some way, attach itself to a need for regulation. We believe the manifest intent of the legislature in using the word "and" instead of "or" was to make it clear that the exercise of one grant of power did not exhaust the statutory grant of the other powers and that the city was free to exercise the individual powers as needed. Quite apart from all this, however, this court has repeatedly held that under statutory provisions granting to municipalities the power to license, tax and regulate, a city may properly enact an ordinance for revenue only without simultaneously exercising its power of regulation. *Harder's Fire Proof Storage Co.* v. *City of Chicago,* 235 Ill. 58, at page 66; *Price* v. *People,* 193 Ill. 114, at page 117; *Banta* v. *City of Chicago,* 172 Ill. 204, at page 219.

The next attack upon the ordinance is that it is constitutionally insufficient in that it is not uniform as to the class upon which it operates. (Art. IX, sec. 1, Const. of 1870.) The company argues that the ordinance is invalid because it violates the uniformity principle in two particulars: (1) that it limits the definition of a "cart" to a vehicle

operated "for hire and reward," and (2) that it further limits the definition to horse-drawn or automotive vehicles, thereby excluding all manually motivated vehicles such as bicycles and hand-carts. The argument of the company as presented seems to overlook that there is no absolute prohibition upon legislative classification, the only requirement being that the classification must rest on a reasonable basis and that the legislation must apply uniformly to all members of the class upon which it operates. In *Reif* v. *Barrett,* 355 Ill. 104, and *People* v. *Deep Rock Oil Corp.* 343 Ill. 388, it is held that great latitude is to be given legislative bodies, where the power is not limited by constitutional inhibition, to classify trades, callings, occupations or business for legislative purposes and if the classification is not unreasonable, capricious or arbitrary, but rests upon some reasonable consideration of public policy, there is no denial of the equal protection of law. Again, the principle is succinctly stated in *Greene* v. *Fish Furniture Co.* 272 Ill. 148, as follows: "The general rule is that classification will suffice as a basis for legislation if such classification is based on a rational difference of situation or condition found to exist in the persons or facts upon which the classification rests." In the absence of any showing to the contrary, we are of the opinion that the limitation of the carter's ordinance in this case to horse-drawn and automotive vehicles, and to such vehicles as are used in the local cartage business for hire and reward, rests upon a rational and reasonable difference of situation and condition, and that the ordinance fully satisfies the constitutional requirement of uniformity of operation upon the class to which it applies. The situation is not unlike that considered in *Melton* v. *City of Paris,* 333 Ill. 190, where the validity of a wheel tax ordinance which divided all vehicles into fifteen classes was involved. In sustaining the validity of the ordinance we said (p. 198): "Even though the municipality, under authority of the statute, may have had the

power to make other classifications and distinctions between vehicles of the same class as to carrying and motive power other than those provided by the ordinance, yet the failure so to do did not render the ordinance unreasonable or unconstitutional, provided the classification and the rates charged were reasonable, were authorized by the statute and all persons within the class were treated alike." The ordinance in this cause treats alike all those who fall within the classes established and, finding the classification to be based upon a rational difference in situation, we conclude, therefore, that the failure of the carter's ordinance to include carts not operated for hire or reward, or carts motivated by other than horse or motor, does not render the ordinance arbitrary, unreasonable or capricious.

Pointing to the definition of "carter" to be read from the case of *Farwell* v. *City of Chicago,* 71 Ill. 269, the company next urges that it is not a "carter" within the meaning of the term as it was there construed or as it was used in 1871 when the legislature first authorized municipalities to license, tax and regulate the occupation. The company points out that in contradistinction to the type of operator dealt with in the *Farwell case,* it is a large, responsible corporation doing a local, intrastate and interstate business and operates its trucks under contract with large industry. We do not find that the *Farwell case* attempted or purported to fix an all-inclusive definition on the occupation of "carter" nor are we bound by what was contemplated by the legislature in 1871. When the Revised Cities and Villages Act was enacted in 1941, section 23-51, which is presently the basis of the city's authority, continued to use the term "carter," without distinguishing between a common or contract carrier for hire, notwithstanding that ordinances enacted under the previous authority had been applied to both types of carriers. It is to be presumed, therefore, that no distinction was intended. In addition, it is a settled rule of statutory construction

that the words of a statute will be held to comprehend matters and things of subsequent creation and invention that would have been included had they existed when the statute was originally enacted. (See: *Schaghticoke Powder Co.* v. *Greenwich & J. Ry. Co.* 183 N.Y. 306, 76 N.E. 153; *State* v. *St. Paul M. & M. Ry. Co.* 98 Minn. 380, 108 N.W. 261; Sutherland, Statutory Construction, Third Ed. 1943, vol. 2, sec. 5102.) Basically, no matter what its methods or magnitude, the business of Willett Company is that of a carter and, for the reasons stated, we conclude that its business comes within the term as used both by the legislature and the municipal authorities.

The concluding contention of the company is that the Illinois Truck Act of 1939 (Ill. Rev. Stat. 1939, chap. 95½, pars. 240-282,) was intended to completely regulate the business of truck transportation of property for hire and, by implication, repealed the power given the city by the Cities and Villages Act to license and tax the occupation of carter. The general rule is that repeal by implication is not favored, and it is only where there is a clear repugnance between the two acts, and the provisions of both cannot be given effect, that the later law must prevail. (*City of Chicago* v. *Hastings Express Co.* 369 Ill. 610; *Kizer* v. *City of Mattoon,* 332 Ill. 545.) An examination of the Illinois Truck Act discloses that it is entirely regulatory, its stated purpose being for truck-traffic regulation, that it does not expressly repeal the authority granted by the Cities and Villages Act, and that the governmental agency charged with its administration is given no power to prescribe rates or impose a tax. None of its provisions conflict with the authority granted cities and villages to license and tax carters. It is of some significance too that the authority granted the municipalities was given anew in 1941 when the Revised Cities and Villages Act was enacted some two years after the Illinois Truck Act was passed. Such a circumstance is consistent with a legisla-

tive intent to permit cities and villages to retain the power to license and tax carters, and to regulate them in areas of municipal regulation not covered by the Illinois Truck Act.

The ordinance in this cause makes no attempt to regulate the business of carter and is purely a revenue-producing measure. In no sense, therefore, can it be said to conflict with the regulations imposed by the Illinois Truck Act, a factor which distinguishes the cases relied upon by the company. Since there is no repugnancy in the two statutes and since the provisions of each may be carried into effect without conflicting with the other, we are, therefore, reluctant to say, from implication only, that when the legislature sought to regulate truck traffic in the State, it thereby intended to take away the city's power to license and tax the occupation of carter within its limits.

Finding no merit to the many objections the company makes to the ordinance, and complying with the mandate of the United States Supreme Court, we therefore reverse the judgment of the municipal court of Chicago and remand the cause to the latter court with directions to enter judgment for the city.

*Reversed and remanded, with directions.*