126 So.2d 543 (1960)
J.T. MOORE, doing business as Moore's Central Service, Appellant,
v.
Ina S. THOMPSON, as Motor Vehicle Commissioner of the State of Florida, Appellee.
Supreme Court of Florida.
December 16, 1960.
Rehearing Denied February 20, 1961.
Wm. McHardy Berson, of Berson, Barnes & Inman, Orlando, for appellant.
Richard W. Ervin, Atty. Gen., Joseph C. Jacobs, Asst. Atty. Gen., Charles V. Knott, Tallahassee, and W.J. Steed, Orlando, for appellee.
*544 Robert J. Pauley, St. Petersburg, amicus curiae.
DREW, Justice.
This appeal is from a final decree of the Circuit Court for Orange County declaring Chapter 59-295 Laws of Florida to be valid and constitutional.[1]
Prior to 1951, our statutes spelled out the prohibition of following "any pursuit, business or trade on Sunday, either by manual labor, or with animal or mechanical power, unless the same be work of necessity * * *."[2] However, the history of this act is traced to the 1879 Legislature. Chapter 3146, Laws of Florida 1879 reads as follows:
"The people of the State of Florida, represented in Senate and Assembly, do enact as follows:
"Section 1. It shall not be lawful for any person to follow any pursuit, business or trade on the Sabbath, the first day of the week, either by manual labor or with animal or mechanical power, except the same be work of `necessity,' or justified by the accident or circumstances of the occasion.
"Sec. 2. No merchant or shopkeeper or other person shall keep open store, or dispose of any wares, merchandise, goods or chattels on the Sabbath day, or sell or barter the same: Provided, That in cases of emergency or necessity they may dispose of the comforts and necessaries of life to customers without keeping open doors.
"Sec. 3. Any violation of this act shall be deemed a misdemeanor, and any person convicted thereof shall be subject to a fine of not less than twenty dollars and not more than fifty dollars.
"Sec. 4. All laws and parts of laws in conflict herewith are hereby repealed.
"Approved March 11, 1879."
Throughout the years the word, "Sabbath" has been changed to "Sunday", however the original command coming down to us from biblical sources is quite clear:
"Ye shall keep the Sabbath therefore; for it is holy unto you: every one that defileth it shall surely be put to death. * * *"[3]
By 321 A.D. Constantine issued an edict which required that all work should cease *545 on that day and this ban was incorporated in several statutes in England, later to be found in the laws of many states.[4] The early American Sunday laws upon analysis reveal their original purpose to be the protection of the Christian Sabbath.[5] These laws followed two patterns. One, making church attendance compulsory in combination with severe punishment for failure to comply; two, requiring both attendance at worship on Sunday and the abstention from all worldly labor. By 1800, statutes were enacted no longer emphasizing the religious aspects of the subject directly so that now instead of, for instance, requiring church attendance, they seek to prohibit other activity thereby removing temptation to stay away from religious services.
In light of the decisions of the United States Supreme Court in People of State of Ill. ex rel. McCollum v. Board of Education, 1948, 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649 and Everson v. Board of Education, 1946, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 holding that the fourteenth amendment protected the individual against any state statute which infringed upon his individual beliefs or convictions, it was inevitable that the so-called Sunday legislation would be subject to attack on this constitutional ground. A study of the judicial history of the "blue" laws, however, shows they have not generally been interpreted as laws establishing or infringing upon religion, but have been viewed as welfare legislation which provides for a general day of rest and relaxation.[6]
The two landmark cases in Florida relating to the constitutionality of the so-called Blue Laws or Sunday Closing Laws are Henderson v. Antonacci, Fla. 1952, 62 So.2d 5 and Kelly v. Blackburn, Fla. 1957, 95 So.2d 260.
In Henderson, an action was brought by certain used car dealers for a declaratory judgment as to the constitutionality of Sections 855.01 and 855.02, Florida Statutes, as amended by Laws of Florida 1951, F.S.A.[7] There the Court stated [62 So.2d 8]:
"These Sections as amended cannot be upheld upon any religious principle, *546 tenet or belief although it be founded upon the Biblical admonition to `remember the Sabbath Day to keep it holy,' because of our constitutional provision requiring the complete separation of church and state. Section 5, Florida Declaration of Rights, F.S.A. and Amendment 1 to Federal Constitution. The constitutionality of these laws must be determined upon a consideration of the query whether each or either was justified as an exercise of the police power which inheres in the state. It is clear that this question must be resolved by application of the civil law without regard to religious precepts, tenets or beliefs except insofar as they furnish a guide for good public morals or health. Hennington v. State of Georgia, 163 U.S. 299, 16 S.Ct. 1086, 41 L.Ed. 166; Brunswick-Balke-Collander Co. v. Evans, D.C., 228 F. 991; Soon Hing v. Crowley, 113 U.S. 703, 5 S.Ct. 730, 28 L.Ed. 1145. See also concurring opinion prepared by Mr. Justice Brown in Gillooley v. Vaughn, 92 Fla. 943, 110 So. 653, in which he quoted with approval from the last cited case. Laws similar to these have been upheld as a general rule not, as aforesaid, because of any right of the government to promote religious observances by legislative enactment but only as an exercise of the police power in the protection of all citizens from the physical, as well as moral, degradation which might result from continuous labor."
In Kelly, a discussion of the religious aspects was unnecessary, but the Court upheld the Henderson reasoning which was grounded upon an entirely separate aspect of the legislation.
We reached the conclusion in Henderson that such statutory provisions were unconstitutional, since the distinctions made in them between businesses permitted to operate on Sunday and those which were prohibited from operating were wholly arbitrary and made without a reasonable basis for upholding them as a valid exercise of the police power. We disposed of the Kelly case on the authority of the Henderson case, re-affirming and holding decisive of the question presented the following language in that case:
"It may be said that the closing of all business houses on Sunday, except in cases of emergency, bears a rational and reasonable relationship to the public health, safety, morals or general welfare because thereby protection is afforded all citizens from the evils attendant upon uninterrupted labor. Nevertheless, it does not follow that laws containing the exemption of many businesses and vocations, such as the legislative enactments now under consideration, can be said to bear such relationship to the public health, safety, morals or general welfare as to declare them to be valid general laws (although they may be general laws in the sense that they are effective in each and every county of the State) simply because they operate equally upon all within a certain class or classes. It is necessary that there be a valid and substantial reason to make such laws operate only upon certain classes rather than generally upon all. State ex rel. Pennington v. Quigg, 94 Fla. 1056, 114 So. 859; Mayo v. Polk Co., 124 Fla. 534, 169 So. 41, appeal dismissed Polk Co. v. Mayo, 299 U.S. 507, 57 S.Ct. 39, 81 L.Ed. 376; Crandon v. Hazlett, 157 Fla. 574, 26 So.2d 638; Ex parte Jentzsch, 112 Cal. 468, 44 P. 803, 32 L.R.A. 664; City of Denver v. Bach, 26 Colo. 530, 58 P. 1089, 46 L.R.A. 848.
"It is not suggested that the parties who work on used car lots need protection from being cajoled into uninterrupted labor more than do citizens who are engaged in any of the exempt businesses or vocations. We can think of no reason, and none has been suggested to us, why the health, safety, morals or general welfare of our citizens would be safeguarded to any greater degree by requiring used car dealers to close their *547 places of business on Sunday than such rights or guaranties would be safeguarded were such persons allowed to do business on the Sabbath along with proprietors of tourist attractions. Nor is it clear to us that any reasonable basis exists for exempting parking lots and filling stations from the operation of these so-called `Sunday Closing Laws' and not exempting garages. Such distinctions appear to be nebulous, wholly arbitrary and are made without a reasonable basis for upholding them as a valid exercise of the police power. Indeed, each of these distinctions fits into the category of a `distinction without a difference.'"
Having thus held Sections 855.01 and 855.02 Florida Statutes as amended by Laws of Florida 1951, F.S.A., unconstitutional by the Henderson case in 1952, and again by the Kelly case in 1957, we are now called upon to consider the constitutionality vel non of Chapter 59-295, Laws of Florida. As the court below succinctly phrased it:
"* * * and it appears to the Court that no facts are in dispute and the only issue is one of law involving the validity of Chapter 59-295, Laws of Florida."
The pertinent sections of the act follow:
"Section 1. It shall be unlawful for any person, firm or corporation licensed under Section 320.27, Florida Statutes, to engage in the business of buying, selling, trading or exchanging new, used or second-hand motor vehicles, or to offer to buy, sell, trade or exchange new, used or second-hand motor vehicle or interest therein or any written instrument pertaining thereto, on the first day of the week, commonly called Sunday, or on legal holidays, commonly called New Year's Day, Fourth of July, Labor Day, Thanksgiving Day and Christmas.
* * * * * *
"Section 3. A violation of any provision of this act shall subject the offender to the penalties provided for in subsection (9) of said section 320.27, Florida Statutes, and for a first offense to the suspension of license not to exceed thirty (30) days and for a second offense the revocation of license. All suspension or revocation orders shall be reviewable by any court of competent jurisdiction.
"Section 4. Upon proof of the violation of any provision of this act by any licensee it shall be presumed that every other dealer licensed under section 320.27, Florida Statutes, has sustained damages for which no adequate relief exists, except by injunction, and any other licensee shall be entitled to an injunction in any court of competent jurisdiction to restrain and enjoin a further violation of this act.
"Section 5. In any such proceedings to enjoin or restrain a further violation of this act it shall not be necessary to allege or prove any special damages it being presumed by the Legislature that every other licensed dealer has and will continue to sustain damages by any one continuing to violate this act.
"Section 6. If any part of this act shall be held invalid, unconstitutional, void or inoperative, then such holding or invalidity shall not affect the remaining portion of this act."
In the Preamble of the Act, the Legislature made various findings of fact as to the necessity for the exercise of the State's police power in the manner therein attempted:
"Whereas, the Legislature finds and determines and so declares that the business of selling automobiles is a distinct type of business different from other businesses and the sale and delivery of new and used motor vehicles on the first day of the week, commonly *548 called Sunday, and on the legal holidays commonly called New Year's Day, the Fourth of July, Labor Day, Thanksgiving Day and Christmas are contrary to the general welfare and public safety and the enactment of this act is in the interest of the public health, safety, morals and general welfare. Among other reasons are the following: (1) The State Motor Vehicle Commissioner's office, court houses, banks, finance companies and automobile license tag offices are closed on those days and it is impossible to ascertain the status of the title, liens and ownership of motor vehicles, or to obtain proper license tags for the lawful operation of motor vehicles on highways. Without the information which could be obtained if those offices were open, on those days unscrupulous dealers can dispose of vehicles with `clouded' titles and can make `fast deals' and take advantage of other dealers and the public. (2) While not making public liability insurance mandatory, it is the policy of our laws to encourage the obtaining of public liability insurance by all automobile owners under our Financial Responsibility Law and such insurance cannot readily be obtained on those days. Citizens may sustain personal and property damage and the offender on those days be without adequate coverage. (3) The inability of a purchaser to obtain a license tag on those days encourages a dealer to conspire with his customer to permit the illegal use of a dealer tag or encourages the buyer of the vehicle to operate it on the public highways without a proper license tag in violation of law. (4) Many safety requirements for the operation of motor vehicles have been enacted by state law and city ordinances and state and city enforcement officers are not generally working on those days with the result that many vehicles which do not meet the requirements of our safety laws are illegally operated on those days. (5) Mechanics are seldom on duty Sundays and legal holidays to check defective brakes, lights, mirrors and other features which could and would be checked on other days and unscrupulous dealers are enabled to dispose of `unsafe' vehicles to unsuspecting buyers with a minimum chance of being apprehended, thereby endangering the safety of others. (6) Sales of motor vehicles on those days result in increased costs to buyers for the reason that if only one (1) or two (2) dealers operate on Sundays and legal holidays they gain a little extra business from other dealers who, for self-preservation, will be forced to engage in sales on the same days with resultant increased overhead costs, dissatisfied employees and higher automobile prices. (7) By polls taken in Florida it appears that more than ninety (90%) percent of the new and used automobile dealers are opposed to the sale of motor vehicles on Sundays and legal holidays but are, in most of our larger cities, now selling new and used vehicles on those days to meet competition. (8) Since automobile dealers are regulated by law and are licensed by the state, it is within the police power of this state to regulate a business, which if allowed to operate on Sundays and legal holidays contributes to the evils herein found to exist and prevent damages to be sustained by other dealers when this act is violated, * * *."
Obviously the law cannot be upheld on the basis of any religious principle, tenet or belief because of our constitutional provisions requiring the complete separation of church and state.[8] The language of the Court in Henderson furnishes the yardstick by which the validity of the statute may be determined.
"It is necessary that there be a valid and substantial reason to make such *549 laws operate only upon certain classes rather than generally upon all. State ex rel. Pennington v. Quigg, 94 Fla. 1056, 114 So. 859; Mayo v. Polk Co., 124 Fla. 534, 169 So. 41, appeal dismissed Polk Co. v. Mayo, 299 U.S. 507, 57 S.Ct. 39, 81 L.Ed. 376; Crandon v. Hazlett, 157 Fla. 574, 26 So.2d 638; Ex parte Jentzsch, 112 Cal. 468, 44 P. 803, 32 L.R.A. 664; City of Denver v. Bach, 26 Colo. 530, 58 P. 1089, 46 L.R.A. 848." [62 So.2d 9.]
Appellee argues that there is a valid and substantial reason why this legislation should act upon the class it does rather than upon all as demonstrated by the finding of facts recited in the Preamble to the legislation.
Legislative findings and declarations of policy are presumed to be correct but are not binding upon the courts under all conditions. The courts will abide by such legislative decisions unless such are clearly erroneous, arbitrary or wholly unwarranted.[9]
That the Legislature may classify automobile dealers and pass laws regulating them as a class cannot be doubted. Chapters 318, 319 and 320, Florida Statutes 1957, F.S.A., are typical of such regulations and the findings of the Legislature would be pertinent to and clearly justify regulations such as these. Moreover, it is quite obvious that the Legislature, in the enactment of the very stringent regulations contained in these chapters, has adequately and thoroughly protected the public against the very evils mentioned in the Preamble to the subject act.
The three decisions of this Court relating to the Fair Trade Act present an almost identical situation to that which now confronts us. In Liquor Store, Inc. v. Continental Distilling Corporation, Fla. 1949, 40 So.2d 371, this Court struck down the Fair Trade Act as unconstitutional and invalid. This decision was handed down in April of 1949. The Legislature of that year then enacted Chapter 25204, Acts of 1949, which was a reenactment of the same Fair Trade Act preceded by certain findings of fact attempting to justify the enactment of the legislation and to avoid the impact of the previous decision of this Court declaring said act to be unconstitutional. In disposing of an attack upon the 1949 act containing such findings of fact, this Court said in Seagram-Distillers Corp. v. Ben Greene, Inc., Fla. 1951, 54 So.2d 235:
"* * * with one exception every question posed by appellants was determined by this Court adversely to appellants' position in and by our decision in the case of Liquor Store, Inc., v. Continental Distilling Corporation, Fla., 40 So.2d 371.
"The question which was not, and which could not have been, presented in the above mentioned case is the one which deals with the findings or recitations of fact and declaration of necessity as to the State's economic policy made by the legislature and incorporated in Chapter 25204, Laws of Florida 1949, F.S.A. § 541.001 et seq., which Act is now before us for consideration."
The Court then set forth the findings of fact attempting to justify the enactment of such legislation and held:
"* * * The general rule is that findings of fact made by the legislature are presumptively correct. However, it is well recognized that the findings of fact made by the legislature must actually be findings of fact. They are not entitled to the presumption of correctness if they are nothing more than recitations amounting only to conclusions and they are always subject to judicial inquiry. Moreover, findings of fact made by the legislature do not carry *550 with them a presumption of correctness if they are obviously contrary to proven and firmly established truths of which courts may take judicial notice. If the subject upon which the legislature makes findings of fact is one which is fairly debatable, the presumption of correctness attaches and remains extant until and unless such findings are challenged and disproved in an appropriate proceeding." (Emphasis added.)
While in the foregoing case this Court said it was unnecessary to decide the effect the Court should give the Legislature's findings of fact, in the subsequent case of Miles Laboratories, Inc., v. Eckerd, Fla. 1954, 73 So.2d 680, 682, relating to the same Fair Trade Act, this Court held said act to be unconstitutional and invalid despite such legislative findings of fact. The Court observed:
"Legislative `findings of fact' as to the policy behind the law, does not remove the lack of the `yard stick' standard * * *."
The "yard stick" standard referred to in the foregoing opinion was free competition. In the present case it is the requirement of a valid and "substantial reason" for the legislation.
No useful purpose would be served by a detailed discussion of the findings of fact of the Legislature which seek to justify the imposition of the prohibition against the sale of these automobiles on Sundays and the designated holidays.
For the sake of illustration, however, we will briefly discuss some of such legislative findings and explain the reasons which impel us to conclude they do not remove the constitutional deficiencies of the act.
One fact so found was that it was impossible to ascertain the status of the title, liens and ownership of vehicles on the designated days because certain offices were closed, and that, therefore, unscrupulous dealers could dispose of vehicles with clouded titles and make fast deals to take advantage of other dealers and the public. This Court is presumed to know what everybody knows  and, it is known by everybody that the described offices are also closed on most Saturdays, holidays not designated and between late afternoon and early morning of the next day. Moreover, unscrupulous dealers may be dealt with by license revocation under the provisions of Chapter 320, Florida Statutes, F.S.A. Then there is the finding that, because a purchaser may not readily obtain liability insurance on such days, the public welfare demands he be not sold a car on that day. A purchaser is not required under the law to have liability insurance; one can obtain such insurance by a simple telephone call if he desires it and, as in the preceding example, the same conditions exist on evenings and other holidays and to all intents and purposes on Saturdays which are now commonly observed as business holidays in most places. The same reasons apply to the findings with reference to selling faulty or defective vehicles and the other factual findings. It is apparent on the face of the findings that they do not  and cannot  constitute the basis for a finding that this enactment is a reasonable and valid exercise of the police power of the State.
While the act is one purporting to regulate this particular business, it is much more than a regulation. Chapters 318, 319 and 320, Florida Statutes, F.S.A., are illustrations of regulations of a particular industry while the object of this act is  not to regulate  but to prohibit such business on designated days.
The power to regulate does not encompass the power to prohibit.[10] "The *551 Legislature", we held in Cawthon v. Town of De Funiak Springs, 1924, 88 Fla. 324, 102 So. 250, 251 "can legally authorize the exercise of the police power only for proper purposes and only to the extent that it is necessary to conserve the public welfare in the premises."[11] We fail to see where the thing dealt with, or the method of dealing readily adapts itself to the perpetration upon the public of deception or fraudulent imposition.[12] We found, for instance, that while the Legislature could regulate the business of selling goods at auction because of the public interest involved, such statutes had to be enacted in aid of the police power and must be regulative and not prohibitive.[13] In State ex rel. James v. Gerrell, 1938, 137 Fla. 324, 188 So. 812, 814, we stated:
"We next consider the provisions of Section One of Chapter 18069, requiring all persons conducting an auction sale to post a bond in the sum of two thousand dollars, payable to the Governor conditioned to pay all losses and damages claimed against the licensee for misrepresentations and pay a license fee of one thousand dollars for each county in which a sale is conducted, the said license being limited to fifteen days. Section 2.
"The legislature may within its discretion impose reasonable excise taxes for the privilege of engaging in business of any kind including that of selling by auction. It may also require a bond to protect the public against fraud and deception, but to impose a bond of two thousand dollars and a license tax of one thousand dollars every fifteen days on all persons conducting an auction sale without any reference to the character or the amount of the sale is so propably arbitrary and unreasonable as to condemn it on its face. Such an imposition amounts to a prohibition of large numbers from engaging in a legitimate business and is beyond all the necessities for the legislation. Such an imposition would impose an undue burden on many who were not excluded from the business. State ex rel. Bonsteel v. Allen, 83 Fla. 214, 91 So. 104, 26 A.L.R. 735; Perry Trading Co. v. City of Tallahassee, 128 Fla. 424, 174 So. 854, 111 A.L.R. 463." (Emphasis added.)
In the instant case the regulatory aspects of the statute are "so palpably arbitrary and unreasonable as to condemn it on its face. Such an imposition amounts to a prohibition of large numbers from engaging in a legitimate business and is beyond all the necessities for the legislation. * * *"
We hold the "valid and substantial reason" [62 So.2d 9] yardstick has not been met which would allow the Legislature to make such a law operate only upon this certain class of business, rather than generally upon all. It is our conclusion that Chapter 59-295 Laws of Florida is unconstitutional and invalid.
We are not unmindful of the decisions of other states set forth in the opinion and judgment of the trial court holding similar acts of other states to be valid and constitutional. Most of these cases, and notably the cases from New Jersey, Indiana and Michigan, plainly indicate the basis for *552 upholding such acts to be the public policy of said states for closing businesses on Sunday. Such, as we have pointed out, is not the public policy of this State. The views of the courts of other states simply do not coincide with the view we entertain of this subject.
We have heretofore referred to the three decisions of this Court striking down the Fair Trade Act, and, there, as here, this Court was obviously not following the numerical weight of authority. At the time we decided the first of these cases, the highest courts of other states, where similar laws had been enacted, had almost without exception approved them. Nevertheless, in the years which have passed since the Miles decision, the great majority of cases which have considered the question of the constitutionality of the so-called Fair Trade Act have concluded as this Court did in the beginning that such acts were unconstitutional and invalid.
Reversed and remanded with directions to enter a decree in accordance with the views herein expressed.
THOMAS, C.J., and HOBSON, THORNAL and O'CONNELL, JJ., concur.
TERRELL and ROBERTS, JJ., dissent with opinion.
ROBERTS, Justice (dissenting).
The sole issue on this appeal is the constitutionality vel non of Ch. 59-295, Acts of 1959, now appearing as Sec. 320.272, Fla. Stat., F.S.A. The Act in question prohibits the sale or exchange, or negotiation therefor, of new or used motor vehicles on Sundays and five enumerated legal holidays (New Year's Day, the Fourth of July, Labor Day, Thanksgiving Day, and Christmas Day) by persons or corporations licensed under Section 320.27, Fla. Stat., F.S.A., to buy, sell or deal in used cars.
The appellant, a used-car dealer, attacked the Act on various constitutional grounds in a suit for declaratory decree and injunctive relief filed in the lower court after the appellee, the Motor Vehicle Commissioner of the State of Florida, had instituted proceedings for the revocation of appellant's used-car dealer's license because of appellant's violation of the Act by offering for sale and selling a motor vehicle on a named Sunday. The lower court entered its decree holding the statute valid, and an appeal has been taken directly to this court from such decree as authorized by Section 4(2), Article V, Florida Constitution, F.S.A.
The appellant contended in the court below and here contends, among others, that the Act is an improper exercise of the police power and deprives him of his property rights without due process and contrary to the equal protection clauses of the federal and state constitutions.
This court has recently considered the validity of Sunday Closing Laws, sometimes referred to as "Blue Laws," and held invalid the particular laws there involved because the classification of businesses and vocations made therein was unreasonable and arbitrary and "without a reasonable basis for upholding them as a valid exercise of the police power." Henderson v. Antonacci, Fla. 1952, 62 So.2d 5, 9, followed in Kelly v. Blackburn, Fla. 1957, 95 So.2d 260. In so doing this court said:
"It is necessary that there be a valid and substantial reason to make such laws operate only upon certain classes rather than generally upon all." Henderson v. Antonacci, supra, 62 So.2d at page 9.
In the Preamble to the Act here in question the Legislature made various findings of fact as to the necessity for the exercise of the State's police power in the manner therein attempted. Among the many reasons cited by the Legislature are the difficulty or impossibility, on Sundays and the enumerated holidays, of ascertaining the *553 status of title and liens on motor vehicles, of obtaining insurance coverage, and of securing mechanical servicing and safety checks. The burden is upon the appellant to overturn or disprove these findings of fact. See City of Tampa v. State, 155 Fla. 177, 19 So.2d 697; Miami Home Milk Producers Ass'n v. Milk Control Board, 124 Fla. 797, 169 So. 541. It is equally well settled that every presumption is in favor of the constitutional validity of a legislative Act, Gaulden v. Kirk, Fla. 1950, 47 So.2d 567; that all doubts as to constitutionality are to be resolved by the courts in favor of the validity of a statute, State ex rel. Davis v. Rose, 1929, 97 Fla. 710, 122 So. 225; and that it is the duty of the courts to uphold a statute unless it is clearly made to appear beyond a reasonable doubt that the statute is unconstitutional, Mayo v. Texas Co., 1939, 137 Fla. 218, 188 So. 206.
I have given earnest and careful consideration to the contentions here made by appellant as to the invalidity of the statute  involving, as it does, the curtailment of a valuable property right  and have concluded that the argument and assertions made by appellant are not sufficient to undermine the force and verity of the recitations in the Act under applicable legal principles. The legislative determination is, in effect, that on days most generally observed as holidays by workers in vitally related occupations  mechanics, insurance salesmen, safety enforcement officers, county and state employees concerned with the titles to and liens on motor vehicles  the public is peculiarly vulnerable in dealing with used-car dealers. A consideration of mechanical and financial hazards alone would appear to justify an exercise of the police power in the premises. And the profusion of regulatory statutes already governing motor vehicles is, in itself, evidence of the unusual problems involved in the business of selling or transferring such property in comparison with those involved in the sale or transfer of other types of personalty. In these circumstances I have concluded, and would hold, that the Act in question is based upon "valid and substantial" reasons for the restraints therein imposed and for the classification therein made.
This conclusion appears to be well supported by decisions sustaining similar legislation in other states. Cf. Gundaker Central Motors v. Gassert, 23 N.J. 71, 127 A.2d 566; Tinder v. Clarke Auto Co., 238 Ind. 302, 149 N.E.2d 808; Mosko v. Dunbar, 135 Colo. 172, 309 P.2d 581; Stewart Motor Co. v. City of Omaha, 120 Neb. 776, 235 N.W. 332; City of Chicago v. Willett Co., 1 Ill.2d 311, 115 N.E.2d 785. As stated in Mosko v. Dunbar, supra, 309 P.2d at page 586:
"Today the automobile has become a definite and well-established part of our way of life; its use, operation, manufacture, sale, license, registration, taxation, insurance, theft, and many other related matters have received special legislative recognition and attention. Certainly the legislature has treated the motor vehicle business as a special type of business. The public has accepted it as such. Were we to hold that it is arbitrary and unreasonable action on the part of the legislature to place motor vehicle dealers in a classification separate and apart from merchants in general, it would be to close our eyes to reality." (Italics supplied.)
Nor do I think the fact that the statute applies only to those licensed as used-car dealers under Section 320.27, and not to isolated transactions by individuals or to dealers who, conceivably, might deal exclusively in new cars, renders it invalid. Where the nature of the particular business is such as to induce greater violation of the law than is true of other businesses, then lines of legitimate classification can be drawn. See Tinder v. Clarke Auto Co., supra, 149 N.E.2d 808; Irishman's Lot v. Cleary, 338 Mich. 662, 62 N.W.2d 668. And I think the lines here drawn by the Legislature, with respect to parties affected and times designated, are well within the legislative *554 power to determine those areas where the nature of the particular business is such as to induce greater violation of the law or greater risks to public welfare than is true at other times or in other dealings. Thus, the fact that the same risks may exist to a lesser extent on days other than those specified, or in sales by dealers who handle only new cars or by individuals in isolated cases, does not preclude a finding that the controls imposed are properly designed to correct the existing evil so far as possible without arbitrary discrimination against a business enterprise.
Appellant also attacks the sufficiency of the title to Ch. 59-295 under Section 16, Article III of the Florida Constitution, and the validity of the Act under Section 1, Article III, insofar as it allegedly delegates legislative functions to an administrative official by failure to define with absolute particularity the conduct prohibited. In neither respect can I find the law deficient. The title to the Act fully complies with the requirement that it indicate "the general nature and substance of the content of the body of the statute." Kirkland v. Phillips, Fla. 1958, 106 So.2d 909. And the language of the Act, including the phrase "offer to * * * sell," is not, in my opinion, fatally ambiguous, but sets with adequate particularity a standard by which administrative determination of infractions, judicially reviewable, can properly be made. State ex rel. Davis v. Fowler, 94 Fla. 752, 114 So. 435.
The other questions here argued by appellant have been considered and I find them to be without merit.
For the reasons stated, the decree appealed from should be affirmed and I respectfully dissent from the majority opinion reversing it.
TERRELL, J., concurs.
TERRELL, Justice (dissenting).
I agree with the dissenting opinion of Mr. Justice ROBERTS, so I do not intend in this concurrence to thrash over his straw. The legislature prefaced Chapter 59-295, Acts of 1959, the law under assault, with eight Whereases, putting the world on notice of its reasons for the act. If one of these reasons is good, that is to say free from arbitrary and unreasonable exactions, it is within the police power of the legislature to enact and this court is powerless to disturb it. The ninth and tenth amendments to the federal constitution deal with individual and states rights and the Supreme Court of the United States has within late years been criticized for crossing the line that separates legislative from judicial power and preempting the former, more than it has for any other constitutional transgression. This court, every court for that matter, should refrain from setting itself up as a demigod to determine every question of legislative as well as judicial power.
We are confronted here with a question of having to do with the police power, to determine which the legislature is the sole judge unless the act assaulted is shown to be arbitrary and unreasonable. Even in such cases courts should bear in mind that members of the legislature take the same oath to obey the constitution that we do; there are able lawyers in the legislature; my experience has been that they examine acts involving the police power carefully; they have information before them supporting reasons for such acts that we cannot possibly have, all of which should make us more hesitant to strike them down; in fact, we should not do so if there is any theory upon which they can be upheld. We should never do so because they do not square with our political, economic, social or other peculiar views.
I have examined the "Whereas" to the act in question and I think the legislature had ample ground for determining the business of selling automobiles to be a distinct type of business different from other businesses and the sale and delivery of new and used motor vehicles on the first day of the week [Sunday] and on legal *555 holidays [New Year's Day, Fourth of July, Labor Day, Thanksgiving and Christmas] is contrary to the general welfare and public safety and that the passage of the act in question was in the interest of the public health, safety, morals and general welfare.
I find that numerous states, including Florida, have passed similar acts regulating the automobile business and they have been upheld for reasons pointed out in the opinion of Mr. Justice ROBERTS. I refer particularly to Gundaker Central Motors v. Gassert, 23 N.J. 71, 127 A.2d 566, 572, the leading case in the country on the question presented, wherein the opinion was rendered by the late Mr. Chief Justice Arthur T. Vanderbilt, who, among other things, said:
"The fact that the sale of motor vehicles is singled out for legislative treatment is no ground for complaint if there is any reasonable basis for such action. * * *. And there is reasonable basis if the buying and selling of motor vehicles on Sunday has effects inimical to the public good and welfare. Under the police power `the State may protect its citizens from physical and moral debasement which comes from uninterrupted labor.' [Citing cases.]
* * * * * *
"The state has an absolute right to enter here and force on all and every one so engaged regulations for the benefit of the public, and it is not for the court to say that its action in doing so is contrary to the constitutional provisions against discrimination merely because there are classes similarly situated with respect to public or social evils requiring similar legislation that are yet unregulated [citing cases]. As we have already indicated, the Legislature has a wide range of discretion in the choice of the means and methods by which it shall enhance the public good and welfare [citing cases]."
For these and numerous other reasons, I dissent and concur in the dissenting opinion of Mr. Justice ROBERTS.
ROBERTS, J., concurs.
NOTES
[1] "Measured by the rules laid down in numerous Florida cases, and apparently supported by the great weight of authority in other jurisdictions where similar laws were involved, such as Gundaker Central Motors v. Gassert, 1956, 23 N.J. 71, 127 A.2d 566; Tinder v. Clarke Auto Co., 1958, 238 Ind. 302, 149 N.E.2d 808; Irishman's Lot v. Cleary, 1954, 338 Mich. 662, 62 N.W.2d 668; Mosko v. Dunbar, supra [135 Colo. 172, 309 P.2d 581]; Rosenbaum v. City and County of Denver, 1938, 102 Colo. 530, 81 P.2d 760; Stewart Motor Co. v. City of Omaha, 1931, 120 Neb. 776, 235 N.W. 332; City of Chicago v. Willett Co., 1933, 1 Ill.2d 311, 115 N.E.2d 785; and Humphrey Chevrolet v. City of Evanston, 1956, 7 Ill.2d 402, 131 N.E.2d 70 [57 A.L.R.2d 969]; the Court is of the opinion that Chapter 59-295 is a valid, constitutional Act fully within the power of the Legislature to enact and should be enforced to prevent the evils the Legislature found to exist. Therefore, it is, upon consideration thereof, Ordered, Adjudged and Decreed as follows:

"1. Respondent's Motion for Summary Decree be and the same is hereby granted.
"2. Petitioner's Motion for Summary Decree be and the same is hereby denied.
"3. Petitioner's application for permanent injunction be and the same is hereby denied.
"4. Chapter 59-295, Laws of Florida, is hereby declared to be a valid and constitutional statute.
"Done And Ordered in Chambers at Orlando, Florida, this 1st day of July, 1960."
[2] Section 855.01, Florida Statutes 1949, F.S.A.
[3] Exodus 31:14.
[4] 21 Encyclopaedia Britannica 565 (1954).
[5] 83 C.J.S. Sunday § 3 (1953).
[6] In this era of limited work weeks, the premise upon which many of these decisions rest is, to say the least, greatly weakened.
[7] "Section 1. That section 855.01, Florida Statutes 1949, be amended to read:

"Section 855.01 Following trade, etc., on Sunday
"Section 855.01 Whoever follows any pursuit, business or trade on Sunday, either by manual labor or with animal or mechanical power, unless the same be work necessary to furnish essentials and ordinary aids to the public, shall be punished by a fine of not more than $250.00; provided, however, that nothing contained in the laws of Florida shall be so construed as to prohibit the preparation or printing of any newspaper intended to be circulated and sold on Sunday, or to prohibit the circulation and sale on Sunday of same, or to prohibit the circulation and sale on Sunday of any newspaper theretofore printed. Provided nothing contained in this section shall apply to theaters in which moving pictures are shown, or any law, city ordinance or county resolution pertaining to alcoholic beverages."
"Section 2. Section 855.02, Florida Statutes 1949, is amended to read:
"Section 855.02 Selling goods on Sunday
"Section 855.02 Whoever keeps open store or disposes of any wares, merchandise, goods or chattels on Sunday, or sells or barters the same, shall be punished by a fine of not more than $250.00; provided, however, that neither this section nor the foregoing section shall apply to businesses or concerns such as newspapers, filling stations, restaurants, tourist attractions, and concessions operated at the place of and in connection therewith, outlying grocery stores, hotels, drug stores, parking lots, transportation companies or facilities, public utilities, moving pictures. In cases of emergency or necessity, however, merchants, shopkeepers and others may dispose of the comforts and necessities of life to customers without keeping open doors.
"Nothing in this Act shall affect any law, city ordinance or county resolution pertaining to alcoholic beverages."
[8] Section 5, Florida Declaration of Rights, F.S.A.; Amendment 1 Federal Constitution.
[9] 6 Fla.Juris.Constitutional Law, Sec. 71 (1956); Miami Home Milk Producers Association v. Milk Control Board, 1936, 124 Fla. 797, 169 So. 541, 542; State ex rel. Adams v. Lee, 1936, 122 Fla. 639, 166 So. 249.
[10] For instance in State ex rel. Adams v. Lee, supra, we held [122 Fla. 639, 166 So. 260]:

"We agree with relators in this case that the state Legislature may not, under the guise of a taxing act, under whatever form constructed, consistent with sections 1, 4, and 12 of the Florida Constitutional Declaration of Rights, and consistent with section 5 of article 9 and section 29 of article 16 of the State Constitution, deliberately destroy and confiscate useful and lawful retail merchandising businesses at the behest of, or for the benefit of, some other particular group of citizens possessing sufficient political prestige to coerce such act through the Legislature * * *."
[11] See also Maxwell v. City of Miami, 1924, 87 Fla. 107, 100 So. 147; 33 A.L.R. 682; see, also, Roach v. Ephren, 1921, 82 Fla. 523, 90 So. 609.
[12] Perry Trading Co. v. City of Tallahassee, 1937, 128 Fla. 424, 174 So. 854, 861, 111 A.L.R. 463.
[13] Ibid and also see Levy v. Stone, 1929, 97 Fla. 458, 121 So. 565; Matheny v. Simmons, 1932, 165 Miss. 429, 139 So. 172; 5 Am.Jur. 447.