**GRAND UNION CO., et al v. CITY OF TAMPA, et al.**
No. 130519-C.

Circuit Court, Hillsborough County.
September 17, 1963.

George C. Winn of Fowler, White, Gillen, Humkey & Trenam, Tampa, for plaintiffs.

A. Broaddus Livingston, Tampa, for defendants.

James M. McEwen, Tampa, for intervenors.

JOHN G. HODGES, Circuit Judge.

*Final decree:* This action for injunction and declaratory relief was brought by the Grand Union Company, F. F. — J. M. Fields of East Fla., Inc., and Consumers Mart of America, Inc. against the city of Tampa, its mayor, Julian Lane, and its police chief, Neil G. Brown, to enjoin enforcement of ordinance 3203-A of the city of Tampa and to declare it invalid. Subsequent to the filing of the complaint this court entered a temporary restraining order enjoining enforcement of the ordinance pending further order of court. The temporary restraining order was entered after a hearing and upon the court's finding that the ordinance was of questionable validity and that plaintiffs would suffer irreparable harm if the defendants were not restrained from enforcing it.

Ordinance 3203-A of the city of Tampa is a type of law which prohibits the sale or offering for sale of certain enumerated items of merchandise within the city on Sunday.

In due course the defendants filed an answer to the complaint. Thereafter, the Merchants Association of Greater Tampa, Inc., and the Florida Retail Federation, Inc. were allowed to intervene as additional parties defendant, but were later dismissed as parties upon the basis that those associations did not have an appropriate direct interest in the litigation. However, twenty-five persons, firms or corporations, operating businesses in the city of Tampa, were later permitted to intervene as interested parties in support of the ordinance. An amendment to plaintiffs' complaint was also permitted by agreement of counsel and the answers of all parties were ordered applicable to the complaint as amended.

During the pre-trial conference, Zayres of Tampa, Inc., was permitted to become an additional party plaintiff by agreement of counsel, and an order upon that agreement was entered in open court. Shortly before trial, certain interrogatories were propounded by defendants and intervenors to plaintiffs, but plaintiffs filed objections thereto. Defendants and intervenors did not press the interrogatories and the same were abandoned by agreement of counsel.

During pre-trial conferences and during trial many facts were stipulated, thereby limiting, to some extent, the need for proof of certain facts at trial.

### Questions presented

Through the pleadings, the pre-trial conferences and discussion by counsel, the following questions have been before the court —

(1) Whether the court has jurisdiction of the cause.

(2) Whether the ordinance is so arbitrary and unreasonable as to violate the plaintiffs' property rights under the Florida and federal constitutions.

(3) Whether the ordinance is contrary to the common law of this state requiring that an ordinance be reasonable.

(4) Whether a reasonable basis exists for the classification contained in the ordinance as to the articles included within its prohibition and the articles without said prohibition; and whether the distinctions upon which the said classifications are based are real and substantial and are calculated to effectuate a valid exercise of the police power or whether the classifications are based upon distinctions without differences.

(5) Whether the ordinance and its terms are so vague, uncertain, indefinite and ambiguous as to be incapable of rational enforcement, as to fail to give reasonable notice to a person of the conduct proscribed, as to constitute a delegation of legislative authority to enforcement officials and as to cause men of ordinary intelligence to guess as to the meaning of the terms employed or differ as to the intent, purpose and application of the ordinance.

(6) Whether the sale or offering for sale of the merchandise prohibited by the ordinance is properly established to be a public nuisance.

(7) Whether the ordinance, which affects the rights of plaintiffs and others, is designed to accomplish, and does accomplish, a result which could reasonably be intended as a proper exercise of police power.

(8)   Whether the penalties prescribed in the ordinance for a violation thereof are in excess of the penalties authorized by the city under the organic and statutory laws of Florida.

(9)   Whether, in the foregoing circumstances, the rights of the plaintiffs and others similarly situated, under the Florida and federal constitutions, are violated so as to render the ordinance unconstitutional.

That the said ordinance may not be upheld upon any religious principles, tenet or beliefs and if valid must be upheld only as a reasonable exercise of the police power for the protection of citizens of the city of Tampa generally from the physical as well as the moral degradation which might result from continuous labor, has been agreed upon by all parties.  Since the plaintiffs had alleged only economic injury and not infringement of their religious beliefs, they had no standing to attack the ordinance as prohibiting the free exercise of religion.

At this point it should be stated that the court finds no fault with the avowed purpose of the ordinance to strengthen the family unit.  The court also believes that there are secular justifications for periodic respite from work, which benefits members of our society to the extent that they are able to approach their tasks with renewed vigor and further that the choice of one particular day facilitates rest and recreation by providing relative quiet for the overwhelming majority of our citizens and that the chosen day to be realistic, popular and in accord with our customs, should be Sunday.

The court is also mindful of the fact that some sort of permissible activity is forbidden in all but three states of our union (Alaska, California, Ohio) and that state-imposed Sunday prohibitions are frequently supplemented by granting to a municipality the specific power to regulate Sunday activity under the police power.

But the court is also cognizant that no such specific power has been granted to the city of Tampa, that the Florida constitution contains no provision for local self government and that municipal corporations in Florida have no inherent right of self government beyond legislative control of the state itself in the absence of some specific constitutional provision granting it to them.

The court also notes that Sunday closing laws are contrary to the public policy of Florida as enunciated by the Supreme Court of Florida.

The court observes, too, that while the ordinance is not designated as a Sunday closing law, its avowed purpose, under the evidence presented to the court, would be frustrated unless it

caused some stores to close and prevented others to open on the Sabbath, thus releasing married employees for a day of rest with their families for the purpose of strengthening the family unit.

While the reasonableness of a state statute is not open to judicial review unless the organic law is violated, the reasonableness of a municipal ordinance is subject to court determination. This is so because the legislature cannot delegate power to a municipality to enact an unreasonable ordinance.

If a doubt exists as to the extent of power attempted to be exercised by a municipality out of the usual range or which may affect the common law rights of the citizen, it is to be resolved against the municipality, and where such constitutional rights are involved, the court cannot bypass its duty to adjudicate them.

The validity of an ordinance is determined by its practical operation and its effect upon particular persons. In order to be valid, it must be reasonable, equal, general and impartial in operation, certain and definite in its provisions and not in conflict with any general laws of the state.

### Discussion of the facts

It was agreed by all the parties that plaintiffs operate businesses in Tampa which would be adversely affected by the ordinance if the same were held to be valid and enforced. It was further agreed, and the court finds, that plaintiffs have the required interest to give the court jurisdiction to consider this cause.

Plaintiffs operate large, well kept and well lighted stores in the city of Tampa which are open on Sundays between the hours of 12 o'clock noon and 7 o'clock p.m. for the sale of some merchandise prohibited by the ordinance and some merchandise not prohibited thereby. They have for sale up to 90,000 items of merchandise which are separated into various departments, but the departmental classifications are frequently different between the stores as to the items contained therein. Some items are sold in more than one department.

It was agreed that there are some store owners who would say that they will open their stores for selling the prohibited items if Sunday openings in the city should increase. Only a small percentage of the people presently employed in selling on Sunday in the city would be required to cease working on Sunday because of the ordinance and not more than 75 employees of plaintiffs would be required to stop. Retail selling constitutes a small percentage of the employment in the city on Sundays. Other employment in the city on Sundays, besides that related to selling the articles prohibited by the ordinance includes selling of goods, wares, and merchandise not prohibited, personal services, in-

surance work, amusements and recreation, transportation by taxi, bus, airlines and railroads including the repair, shop and office workers attendant to that industry, longshoremen, dock workers and shipyard employees, some manufacturing employment, newspaper employees, public and private construction to some extent, some employees of trucking concerns, service stations, garages, automobile repair services, hotel employees, some building attendants, restaurant and entertainment employees, public employees engaged in police and fire protection and other emergency employees, some commercial and industrial employees engaged in employment in fields other than manufacturing, such as advertising, sign making, the communications media, the utilities, and others, bridge attendants, fishermen, boat operators, marina attendants and operators, some real estate sales and service personnel, and employees of gas and oil fuel companies.

There are many stores in the city of Tampa engaged in selling on Sunday which would not reduce the number of employees because of enforcement of the ordinance. There are many items of goods, wares and merchandise which are not considered essential or necessary for the health, recreation, safety or welfare of the people of the city of Tampa and which are not prohibited from sale by the ordinance. If the ordinance is enforced, the plaintiffs will be adversely affected financially and in their ability to provide goods for sale to the public on Sunday.

The ordinance prohibits the sale or offering for sale on Sunday of the listed items "or like goods". It contains a provision for making emergency sales of the prohibited items but it does not permit any other exceptions from the prohibition.

The record is replete with uncontradicted evidence that the members of the city council, as well as the merchants proposing the ordinance and the police officers charged with its enforcement, differed in the interpretation to be given to the ordinance and its terms, and that the city council had no substantial reason bearing on the police power for the distinction between some of the classifications of articles banned from sale and those not banned. Some councilmen thought that other articles should have been prohibited from sale. There is no real and substantial difference presumably related to the health and welfare of the public between the items which can and cannot be sold or in the employment in making such sales. For instance, no reason appears for permitting the sale on Sunday of alcoholic beverages but prohibiting the sale of recordings of spiritual and other types of music, for permitting the sale of a sack of fertilizer but prohibiting the sale of a sack of cement, for permitting the rental of tools

but prohibiting the sale of tools, for permitting the sale of automobiles but prohibiting the sale of washing machines, for permitting the sale of real estate but prohibiting the sale of furniture, for permitting the sale of stationery, greeting cards and cosmetics but prohibiting the sale of utensils for the preparation or eating of food, for permitting the sale of tires and tubes but prohibiting the sale of tire tools, for permitting the sale of boats but not batteries, or for prohibiting employment in the field of selling but not prohibiting employment in the many other fields of labor conducted in the city on Sunday.

The vagueness of the ordinance was revealed by the differing views of the members of the city council, the officials charged with enforcing the ordinance, and the merchants, all of whom appeared and testified as witnesses. The dictionary's (Webster's) definition of "hardware", for instance, denotes it as ware made of metal such as fittings, trimmings, tools, parts of machines, and the like. Many of the foregoing witnesses defined hardware as articles "usually and customarily sold in a hardware store", and some gave the term a much narrower definition. The evidence manifested similar difficulties with other prohibited terms such as "musical instruments". It was demonstrated that reasonable men could differ as to what would be sold in a hardware store and as to what items of merchandise would be considered "hardware" within the prohibition of the ordinance. Similarly, the witnesses differed as to whether many items could or could not be sold without violating the ordinance — as to whether golf shoes, sun hats, stereophonic phonographs, flash-lights, sunglasses, bathing suits, and many other articles would be prohibited. For example, it seemed to be agreed that paper plates could be sold, but that china plates could not, although no reason for the distinction was shown. Yet, there was disagreement as to whether plastic plates could be sold on Sunday under the ordinance. The evidence clearly discloses that the operator of a department type store, such as plaintiffs, would have a difficult, if not an impossible task, in determining which of their many thousands of articles could and could not be sold. Frequently in the testimony, the councilmen and the merchants proposing the ordinance stated that they would have to refer to an attorney or the court for an opinion as to whether a particular item was prohibited from sale. Counsel for defendants and intervenors stated that an attorney would be needed to determine what could and could not be sold. The evidence showed that the effect of the ordinance on employment in the city is not known and no study to determine the same had been made by the enacting body. It also appears from the record that the stores and their operations do not constitute a public nuisance and the parties agreed that no police, traffic, or fire protection problem has been caused.

It is conceivable and possible that the plaintiffs' stores would not stop employing anyone and still abide by the ordinance.

The city officials and merchants differed on the procedures and requirements for an emergency sale within the meaning of section 6 of the ordinance, the terms of which are somewhat enigmatic. There is no reasonable standard of guilt set forth in the ordinance which is penal in nature. Men of ordinary intelligence are required to guess at what is prohibited in addition to the enumerated items by the words "or like goods" — that term being incapable of ascertainment with any degree of certainty. The same problem exists as to what is "an emergency for the health, welfare, or safety of human or animal life."

Under the circumstances, it was indicated, and the court is of the opinion, that this ambiguous portion comprises such an integral part of the ordinance as to be incapable of such severability to leave a law recognizable as one which could be validly intended by the city council.

Section 4 of the ordinance provides punishment for violation of the terms of the ordinance. It provides, upon second conviction and all subsequent convictions, punishment by fine of not more than $500 or the imprisonment for a period not to exceed six months, or both. Section 20, article 3 of the Florida Constitution, prohibits special or local laws in certain enumerated instances, including punishment of a crime or misdemeanor. Section 21 of the article provides that all such laws shall be general and of uniform operation throughout the state. The Florida general law, section 165.19, Florida Statutes, grants only the power for a sixty-days' imprisonment. While the city of Tampa charter contains a grant of power to provide for six months imprisonment terms, it is a special or local act.

No case has been cited to the court involving the validity vel non of an ordinance similar to the one involved in the case at bar. In fact, no case has been cited and no case has been found by counsel or the court passing upon the validity of an ordinance in any city in any state which did not have a statute covering the same topic. The court has struggled in vain in attempting to find valid reasons for upholding the ordinance and has developed serious misgivings as to its validity on its face. Even if the questions presented at trial as to the evidence and its admissibility were decided against plaintiffs, which the court does not do, the court's decision and findings would be the same.

### Conclusions of law

In view of the foregoing, and after having considered all of the evidence and the authorities cited by counsel, the court finds that —

1. This court has jurisdiction of the parties and of this cause.

2. The series of U. S. Supreme Court cases decided during the 1961 term, upholding Sunday blue laws, is inapplicable to this case. The four cases upholding the validity of Sunday closing laws involved no ordinance. They concerned long standing statutes, or amendments thereto, of the states of Maryland, Massachusetts and Pennsylvania. The court, after exhaustive review of the entire history of the Sunday laws, found that the originally religious enactments, if transformed by the state into day-of-rest legislation designed to advance the states' secular goals, were valid despite their indirect burden on religious observance, unless the states might accomplish this purpose by means not imposing such a burden. No statute, law or public policy of Florida was involved, and the cases were jointly decided upon consideration of federal prohibitions. There is nothing in the opinions which indicate that the Supreme Court would reach a conclusion or opinion different from the one herein expressed as to the ordinance in question.

3. This case is determined as a matter of state law as was done in State v. Hill, 369 P. 2d 365 (Kan. 1962), Harvey v. Priest, 366 S. W. 2d 324 (Mo. 1963), and State v. Grimes, 190 N. E. 2d 588 (Ohio 1963), all decided subsequent to the U. S. Supreme Court cases.

4. The ordinance contains an arbitrary classification as to the conduct prohibited — a classification not based upon natural intrinsic or constitutional distinctions between the articles prohibited from sale on Sunday and those permitted to be sold. Moore v. Thompson, 126 So. 2d 543 (Fla. 1960); Kelly v. Blackburn, 95 So. 2d 260 (Fla. 1957); Henderson v. Antonacci, 62 So. 2d 5 (Fla. 1952).

5. The ordinance is an unreasonable exercise of the police power of the city contrary to the organic and common law of this state and similarly is unreasonable in its terms.

6. The ordinance is vague, uncertain and ambiguous as to its application and enforcement, in its failure to set forth a reasonable standard of guilt, and to the extent that it necessarily delegates legislative power to administrative or judicial officials in determining its meaning and the proscribed acts.

7. The classifications provided in the ordinance are not founded upon real distinctions having any reasonable relationship to the best health and welfare of the citizens of the city of Tampa — the distinctions, if any, are nebulous and without differences.

8. The conduct proscribed is not a public nuisance.

9. The language and terms of sections 1 and 6 are ambiguous and vague, as to what is included within the prohibited articles, "or like goods", and the requirements and procedures for an emergency sale which is exempted from the ordinance.

10. The ordinance is an unconstitutional invasion of personal and property rights under the property, equal protection and due process clauses of the Florida constitution and Declaration of Rights.

11. The ordinance is incapable of rational and reasonable enforcement.

12. The ordinance is invalid for the foregoing reasons upon the basis of the agreed facts and the evidence, and is invalid on its face.

13. It is not necessary for the court to reach the question of the propriety of the penal provisions of the ordinance but they appear to violate sections 20 and 21 of article 3 of the Florida constitution and section 165.19, Florida Statutes.

Therefore, upon consideration of the stipulations, the evidence produced at trial, including the testimony of the various witnesses, and the law, it is, ordered and decreed as follows — (1) That ordinance 3203-A of the city of Tampa is invalid and unconstitutional under the law of this state. (2) That the defendants, intervenors and all others are permanently enjoined from enforcing said ordinance. (3) That the bond heretofore deposited by plaintiffs is hereby discharged with directions to the clerk to return the same to plaintiffs. (4) That plaintiffs do have and recover from defendants and intervenors their costs, which shall be settled by the court on proper motion.