646 So.2d 246 (1994)
SILVER ROSE ENTERTAINMENT, INC., a Florida corporation; Sunshine Food Mart, a Florida proprietorship; Dale's Package Store and Lounge Inc., a Florida corporation; Kelly Nail, Inc., a Florida corporation; Ward Castenada, Inc., a Florida corporation; Harry's of Orange Park, Inc., a Florida corporation; Varsity Club, Inc., a Florida corporation; Flynn Restaurants, Ltd., an Iowa corporation; 57 Heaven, a corporation; and Pinter Enterprises, Inc., a Florida corporation, Appellants,
v.
CLAY COUNTY, a political subdivision of the State of Florida, and Scott Lancaster, as sheriff of Clay County, Appellees.
No. 93-4154.
District Court of Appeal of Florida, First District.
November 22, 1994.
*247 Stephen C. Bullock and William K. Thames, II, of Marks, Gray, Conroy & Gibbs, P.A., Jacksonville, for appellants.
Mark H. Scruby, County Atty., Green Cove Springs, for appellee Clay County.
BENTON, Judge.
We are asked to declare unconstitutional on its face a county ordinance outlawing the sale of alcohol on "Christmas day and Christmas night." Appellants contend that the ordinance violates constitutional prohibitions against the establishment of religion.[1] We conclude that Christmas, notwithstanding its deep religious significance for many, also has secular traditions which local government is free to acknowledge, without offending the constitutions either of Florida or of the United States. We affirm the order denying plaintiffs' motion for temporary injunction, and uphold the ordinance.

Procedural History
Alleging themselves licensed to sell alcoholic beverages in unincorporated Clay County, appellants filed in circuit court seeking an injunction against the enforcement of Section 3-2(c), Clay County Code, on grounds that the ordinance "in effect, force[s] the observance of a religious holiday by liquor licensees[,] ... violates the [E]stablishment [C]lause ... and ... Article I, Section 3, of the Florida Constitution ... [,] advances religion in general, and particularly the Christian religion ... and ... results in entanglement between religion and state."
With exemplary alacrity fully appropriate to the importance of the constitutional questions raised, the trial court scheduled a hearing for December 21, 1993, on appellants' verified motion for temporary injunction, which was filed along with the complaint on December 17, 1993.
At the hearing for the first time, as a separate basis for relief, appellants urged that the County has no authority to regulate the days on which purveyors of alcoholic beverages may open for business, on account of section 562.14, Florida Statutes (1993). Even though this contention had not been set out in the complaint or in the verified motion for temporary injunction, the trial court's comprehensive order denying plaintiffs' motion for temporary injunction, entered the day after the hearing, reached the merits of appellants' belated statutory argument, ruling that the statute did not preclude the challenged ordinance.
An earlier effort to obtain review of the order denying plaintiffs' motion for temporary injunction on an emergency basis proved unavailing. In an unreported order *248 entered on December 23, 1993, another panel of this court denied appellants' emergency petition for writ of mandamus or alternatively for order reversing the lower court's denial of motion for temporary restraining order or alternatively for an order granting petitioner's temporary restraining order "without prejudice to the right of petitioners/appellants to pursue their appellate remedies in this case in accordance with Florida Rule of Appellate Procedure 9.130."

Decision Sought
We now have for review the order denying plaintiffs' motion for temporary injunction. Fla.R.App.P. 9.130(a)(3)(B). In that ostensibly preliminary order, the trial court addressed the questions which must be resolved to decide the merits of the controversy. Consideration of the merits in this context was necessary because temporary injunctions should not
be entered in the absence of a substantial likelihood that the party seeking the injunction is entitled to relief on the merits. Such a likelihood is required under Florida law... . It is not enough that a merely colorable claim is advanced.
Prior to issuing a temporary injunction, a trial court must be certain that the petition or other pleadings demonstrate a prima facie, clear legal right to the relief requested. See, e.g., Oxford International Bank and Trust, Ltd. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 374 So.2d 54 (Fla. 3rd DCA 1979), cert. dismissed, 383 So.2d 1199 (Fla. 1980).

Mid-Florida at Eustis, Inc. v. Griffin, 521 So.2d 357 (1988).
City of Jacksonville v. Naegele Outdoor Advertising Co., 634 So.2d 750, 753 (Fla. 1st DCA 1994), review granted, Naegele Outdoor Advertising Co., Inc. v. City of Jacksonville, 645 So.2d 453 (Fla. 1994) (Table). It is one thing to consider the merits, and another to decide them. The grant or denial of a temporary injunction does not ordinarily
decide the merits of the case unless (1) the hearing is specially set for that purpose, [and] (2) the parties have had a full opportunity to present their cases, University of Texas v. Camenisch, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981), and a denial of a preliminary injunction or reversal of an order granting same does not preclude the granting of a permanent injunction at the conclusion of a full hearing. Hialeah, Inc. v. B & G Horse Transportation, Inc., 368 So.2d 930 (Fla. 3d DCA 1979).
Ladner v. Plaza Del Prado Condominium Ass'n, Inc., 423 So.2d 927, 929 (Fla. 3d DCA 1982). At oral argument in the present case, however, appellate counsel joined in a request that the case be decided on the present record. Counsel for plaintiffs below specifically waived the right to offer further evidence, in effect conceding that plaintiffs "have had a full opportunity to present their cases." In these circumstances, considerations of judicial economy militate in favor of reaching the merits of the parties' contentions.

Hours of Sale
In keeping with the rule of decision which forbids reaching constitutional questions when cases can be disposed of on statutory grounds, we turn first to plaintiffs' statutory claim. Appellants contend that Florida counties lack authority under the beverage laws to forbid the sale of alcoholic beverages for an entire day, although they concede that Clay County can limit the hours of sale for alcoholic beverages on particular days in unincorporated portions of the county.
This contention flies in the teeth of the controlling statutes. To the extent not inconsistent with general law, Clay County is authorized to:
Establish and enforce regulations for the sale of alcoholic beverages in the unincorporated areas of the county pursuant to general law.
§ 125.01(1)(o), Fla. Stat. (1993). Pertinent general law contemplates that counties will set and "be responsible for the enforcement of the hours of sale established by county or municipal ordinance," § 562.14(2), Fla. Stat. (1993), and provides:
Nothing contained in the Beverage Law shall be construed to affect or impair the *249 power or right of any county or incorporated municipality of the state to enact ordinances regulating the hours of business ... of any licensee under the Beverage Law within the county or corporate limits of such municipality.
§ 562.45(2)(a), Fla. Stat. (1993). In Hardage v. City of Jacksonville Beach, 399 So.2d 1077 (Fla. 1st DCA 1981), review denied, 411 So.2d 382, we upheld an "ordinance which bans the sale of alcoholic beverages on Sunday with certain exceptions." Hardage, 399 So.2d at 1078. None of the exceptions inured to Hardage's benefit. We upheld the ban there even though that ordinance permitted Sunday sales by certain of Hardage's competitors. But cf. Moore v. Thompson, 126 So.2d 543 (Fla. 1960).
Our decision in City of Jacksonville v. C.J. Ventures, Inc., 558 So.2d 133 (Fla. 1st DCA 1990) stands for the unremarkable proposition that enforcement of an ordinance (whatever the subject matter) is properly enjoined where "the ordinance in question violates the due process provisions of the Fifth Amendment of the Constitution of the United States," C.J. Ventures, 558 So.2d at 135, because "it provides for no standards or criteria upon which the Sheriff is to make," id., decisions as to who is in compliance.

Florida Constitutional Rights
"When called upon to decide matters of fundamental rights, Florida's state courts are bound under federalist principles to give primacy to our state Constitution and to give independent legal import to every phrase and clause contained therein." Traylor v. State, 596 So.2d 957, 962 (Fla. 1992) (footnote omitted). "To be held constitutional, the instant [ordinance] must pass muster under both the federal and state constitutions." In re T.W., 551 So.2d 1186, 1190 (Fla. 1989).
Appellants contend that "the Florida Supreme Court appears to have held that any statute premised upon the requirement that a business close on Sunday, Christmas, or any other religious days is unconstitutional as abridging the separation of Church and State Doctrine." Initial Brief, at 17. We do not read the decision in Moore v. Thompson, 126 So.2d 543 (Fla. 1960), on which appellants rely,[2] for such a broad proposition. At issue in Moore was the validity of a statute forbidding motor vehicle dealers to do business on Sundays or legal holidays, including Christmas.
Although Justice Drew's opinion for the court recounts at some length the history of blue laws in Florida, the Moore court's invalidation of a Sunday closing statute, which affected car dealers but no other businesses, rested on notions of equal protection. The opinion quoted from the precedent on which it chiefly relied:
We reached the conclusion in Henderson that such statutory provisions were unconstitutional, since the distinctions made in them between businesses permitted to operate on Sunday and those which were prohibited from operating were wholly arbitrary and made without a reasonable basis for upholding them as a valid exercise of the police power. We disposed of the Kelly case on the authority of the Henderson case, re-affirming and holding decisive of the question presented the following language in that case:
It may be said that the closing of all business houses on Sunday, except in cases of emergency, bears a rational and reasonable relationship to the public health, safety, morals or general welfare because thereby protection is afforded all citizens from the evils attendant upon uninterrupted labor. Nevertheless, it does not follow that laws containing the exemption of many business and vocations, such as the legislative enactments now under consideration, can be said to bear such relationship to the public health, safety, morals or general welfare as to declare them to be valid general laws (although they may be general laws in the sense that they are effective in each and every county of the State) simply because they operate equally upon all within a certain class or classes. It is *250 necessary that there be a valid and substantial reason to make such laws operate only upon certain classes rather than generally upon all. State ex rel. Pennington v. Quigg, 94 Fla. 1056, 114 So. 859; Mayo v. Polk Co., 124 Fla. 534, 169 So. 41, appeal dismissed Polk Co. v. Mayo, 299 U.S. 507, 57 S.Ct. 39, 81 L.Ed. 376; Crandon v. Hazlett, 157 Fla. 574, 26 So.2d 638; Ex parte Jentzsch, 112 Cal. 468, 44 P. 803, 32 A.L.R. 664; City of Denver v. Bach, 26 Colo. 530, 58 P. 1089, 46 A.L.R. 848.
It is not suggested that the parties who work on used car lots need protection from being cajoled into uninterrupted labor more than do citizens who are engaged in any of the exempt businesses or vocations. We can think of no reason, and none has been suggested to us, why the health, safety, morals or general welfare of our citizens would be safeguarded to any greater degree by requiring used car dealers to close their places of business on Sunday than such rights or guaranties would be safeguarded were such persons allowed to do business on the Sabbath along with proprietors of tourist attractions. Nor is it clear to us that any reasonable basis exists for exempting parking lots and filling stations from the operation of these so-called `Sunday Closing Laws' and not exempting garages. Such distinctions appear to be nebulous, wholly arbitrary and are made without a reasonable basis for upholding them as a valid exercise of the police power. Indeed, each of these distinctions fits into the category of a "distinction without a difference."
Moore, 126 So.2d at 546-47 (emphasis in original). In invalidating the statute in Moore, just as it had invalidated two predecessor statutes seeking to accomplish the same end, the supreme court said:
We hold the "valid and substantial reason" [62 So.2d at 9] yardstick has not been met which would allow the Legislature to make such a law operate only upon this certain class of business, rather than generally upon all.
Moore, at 551. Subsequent case law has confirmed the essentially "equal protection" basis for the court's decision in Moore. E.g., Rollins v. State, 354 So.2d 61, 63 (Fla. 1978).
Appellants' attack on Clay County's ordinance predicated on the line of cases culminating in Moore boils down, therefore, to an assertion that there is no "valid and substantial reason" for regulating the hours of sale of alcoholic beverages, when no other enterprise is so restricted. But this type of discrimination against purveyors of alcoholic beverages is the rule rather than the exception. No case of which we are aware has held that an ordinance "violates the state and federal guarantees of equal protection of the laws," Shevin v. Bocaccio, Inc., 379 So.2d 105, 106 (Fla. 1979), because it "applies only to alcoholic beverage licensees and their employees." Id.
The dictates of due process and equal protection, related in regulation of this type, require only that the statutory means of regulation be rationally related to the statutory objective, and that the members of the regulated class be treated equally. Soverino v. State, 356 So.2d 269 (Fla. 1978); Gammon v. Cobb, 335 So.2d 261 (Fla. 1976).
Id. Clay County's "power to regulate conditions in licensed premises is derived from [the state's] power to totally prohibit sales [of alcoholic beverages.]" City of Daytona Beach v. Del Percio, 476 So.2d 197, 201 (Fla. 1985). "The Florida Constitution and the statutes ... imbue the C[oun]ty with the state's full police powers, including those under the twenty-first amendment." Id.

Religious Establishment Claimed
Under both the Florida and federal constitutions, appellants raise the question whether banning the sale of alcoholic beverages on Christmas amounts to a tacit endorsement or establishment of Christianity as an official religion. With the exception of Marsh v. Chambers, 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983) and Larson v. Valente, 456 U.S. 228, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982), the United States Supreme Court has, since their formulation, applied the three tests articulated in Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 *251 (1971), in deciding whether legislation runs afoul of the Establishment Clause.
First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion, Board of Education v. Allen, 392 U.S. 236, 243, 88 S.Ct. 1923, 1926, 20 L.Ed.2d 1060 (1968); finally, the statute must not foster `an excessive government entanglement with religion.' Walz, [v. Tax Commission, 397 U.S. 664,] at 674, 90 S.Ct. [1409] at 1414, 25 L.Ed.2d 697 (1970)].
Lemon v. Kurtzman, 403 U.S. 602, 612-13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). These three issues must also be addressed in deciding the Florida constitutional question. To these tests, moreover, article I, section 3 of the Florida Constitution adds a fourth: The statute must not authorize the use of public moneys, directly or indirectly, in aid of any sectarian institution. Any statute that passes muster under article I, section 3 of the Florida Constitution necessarily meets the federal Establishment Clause tests.
Governmental support of religion need not be monetary to offend article I, section 3 of the Florida Constitution. No less than its federal counterpart, the Florida provision "was intended to protect against sponsorship ... and active involvement of the sovereign in religious activity." Walz v. Tax Comm'n, 397 U.S. 664, 668, 90 S.Ct. 1409, 1411, 25 L.Ed.2d 697 (1970). Predecessor provisions[3] were the basis for decision in Brown v. Orange County Board of Public Instruction, 128 So.2d 181 (Fla. 2d DCA 1960), in which the court held that the
distribution of Gideon Bibles through the school system each year certainly approximates an annual promotion and endorsement of the religious sects or groups which follow its teachings and precepts. This distribution likewise would tend to impair the rights of plaintiffs and their children to be free from governmental action which discriminates in the free exercise of religious belief.
Brown, 128 So.2d at 185. Even in the absence of the expenditure of public moneys, the Florida Constitution proscribes governmental "endorsement" of religious groups, partly on the theory that such official sanction may interfere with other groups' free exercise of religion.[4]
"If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox *252 in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." West Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943). Our constitutions, state and federal, reflect the view that "a union of government and religion tends to destroy government and degrade religion." Engel v. Vitale, 370 U.S. 421, 431, 82 S.Ct. 1261, 1267, 8 L.Ed.2d 601 (1962). In nearly identical language, the Florida and federal constitutions each proscribe laws respecting any official establishment of religion.
Because the challenged ordinance has no explicit statement of purpose, we are left to infer its purposes. One apparent purpose is to encourage a respite from work, making family activity on Christmas Day possible. To that extent, McGowan v. Maryland, 366 U.S. 420, 452, 81 S.Ct. 1101, 1118, 6 L.Ed.2d 393 (1961), fully answers the contention that Christmas' historical religious significance renders the ordinance unconstitutional. "People of all religions and people with no religion regard [Christmas no less than] Sunday as a time for family activity, for visiting friends and relatives, ... and the like." McGowan, 366 U.S. at 452, 81 S.Ct. at 1118. "To say that the States cannot prescribe [Christmas as well as] Sunday as a day of rest for these purposes solely because centuries ago [or even more recently] such laws had their genesis in religion would give a constitutional interpretation of hostility to religion rather than one of mere separation of church and state." McGowan, 366 U.S. at 445, 81 S.Ct. at 1115.
Along with the putative purpose to encourage purveyors of alcohol to rest from their labors on Christmas, in order to spend time with their families, the ordinance evinces another apparent purpose: To discourage consumption of alcohol on Christmas. Neither of these seeming purposes[5] runs afoul of the state and federal constitutional prohibitions against governmental establishment of religion. If the primary or "actual" purpose of Clay County's ordinance is to commemorate or set apart Christmas as a religious holy day, the ordinance must fall. But "[t]his does not mean that the law's purpose must be unrelated to religion," Corporation of Presiding Bishop v. Amos, 483 U.S. 327, 335, 107 S.Ct. 2862, 2868, 97 L.Ed.2d 273 (1987), in the sense of ignoring that friends and families may prove accessible because they refrain from work on Christmas, albeit for religious reasons. Plaintiffs failed to establish at the hearing that some prohibited purpose motivated adoption of the ordinance, and we are unwilling to presume any unconstitutional motive.
We recognize that abstinence from alcohol is a religious tenet for some. See Larkin v. Grendel's Den, Inc., 459 U.S. 116, 103 S.Ct. 505, 74 L.Ed.2d 297 (1982). On the other hand, sacramental wine is an essential part of Christmas observance in certain Christian traditions, observance which this ordinance could conceivably make more difficult. In any event, we are unable to discern any religious principle that the ordinance under challenge endorses. We are aware of no religious sect that advocates nor any religious teaching to the effect that alcohol should be consumed or be readily available on every day of the year other than Christmas.
Whatever its purposes, no ordinance can pass constitutional muster if its principal or primary effect is to advance religion. We find no such effect here. This ordinance authorizes no expenditure in aid of any institution, sectarian or otherwise. The ordinance does nothing to entangle government with religion in a constitutionally impermissible way.
The entanglement which is forbidden is comprehensive, discriminating and continuing state surveillance, Lynch [v. Donnelly], 465 U.S. 668 at 684, 104 S.Ct. [1355] at 1365, 79 L.Ed.2d [604] at 617 [(1984)]; day-to-day surveillance or administration of religious activities, Board of Educ. of Westside Community Schs. v. Mergens, *253 496 U.S. 226, 252-53, 110 S.Ct. 2356, 2373, 110 L.Ed.2d 191, 217 (1990); and programs whose very nature are apt to entangle the state in the details of administration, Lemon, 403 U.S. at 614-15, 91 S.Ct. at 2112, 29 L.Ed.2d at 757.
Todd v. State, 643 So.2d 625, 630 (Fla. 1st DCA 1994). Nothing of the kind is involved here. In forbidding the sale of alcohol on Christmas Day and Christmas night, Clay County's ordinance does not, as a matter of Florida constitutional law, show "favoritism ... towards citizens based on their personal religious choices ... [nor] endorse the religious practices and beliefs of some citizens." County of Allegheny v. American Civil Liberties Union Greater Pittsburgh Chapter, 492 U.S. 573, 627, 109 S.Ct. 3086, 3119, 106 L.Ed.2d 472 (1989) (O'Connor, J., concurring).
The Supreme Court of Connecticut found certain Connecticut statutes "unconstitutional in that they prohibit the sale of alcoholic beverages on Good Friday, in violation of ... the first and fourteenth amendments to the United States constitution." Griswold v. State, 183 Conn. 552, 558, 441 A.2d 16 (1981). But see Cammack v. Waihee, 932 F.2d 765 (9th Cir.1991) (declaring Good Friday a state holiday does not offend the Establishment Clause). While we have no quarrel with the conclusions reached by the Griswold court (and the dissent in Cammack), whether as a matter of federal or of Florida constitutional law, we conclude that, unlike Good Friday, Christmas enjoys a special constitutional status by virtue of the secular traditions associated with it. The same is true of Thanksgiving, and even of Halloween. See Guyer v. School Bd. of Alachua County, 634 So.2d 806 (Fla. 1st DCA 1994).
Section 3-2(c), Clay County Code, does not offend article I, section 3 of the Florida Constitution, nor, a fortiori, the Establishment Clause of the First Amendment to the United States Constitution. The proposition that any law that recognizes or sets apart Christmas in any way amounts to an unconstitutional, official expression of approval of Christianity is not tenable. County of Allegheny; Lynch v. Donnelly, 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984). No less an authority than Justice Brennan tells us that "public designation of Christmas Day as a holiday is constitutionally acceptable," Lynch, 465 U.S. at 710, 104 S.Ct. at 1378, because "the Christmas holiday in our national culture contains both secular and sectarian elements." Id. (Brennan, J., dissenting) (footnote omitted).
AFFIRMED.
ZEHMER, C.J., and KAHN, J., concur.
NOTES
[1] The First Amendment to the United States Constitution, made applicable to the States by the Fourteenth, Everson v. Board of Education, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1946), provides that "Congress shall make no law respecting an establishment of religion... ." Article I, section 3 of the Florida Constitution provides:

There shall be no law respecting the establishment of religion... . No revenue of the state or any political subdivision or agency thereof shall ever be taken from the public treasury directly or indirectly in aid of any church, sect, or religious denomination or in aid of any sectarian institution.
[2] Appellants also cite Kelly v. Blackburn, 95 So.2d 260 (Fla. 1957) and Henderson v. Antonacci, 62 So.2d 5 (Fla. 1952).
[3] At the time of the Brown decision, Florida's "establishment clause" provided:

No preference shall be given by law to any church, sect or mode of worship and no money shall ever be taken from the treasury directly or indirectly in aid of any church, sect or religious denomination or in aid of any sectarian institution. Art. 1, § 5, Fla. Const. (1885). The "free exercise clause" appeared separately:
The free exercise and enjoyment of religious profession and worship shall for-ever be allowed in this State, and no person shall be rendered incompetent as a witness on account of his religious opinions; but the liberty of conscience hereby secured shall not be so constrewed as to justify licentiousness or practices subversive of, or inconsistent with, the peace or moral safety of the State or society.
Originally, as now, both ideas had appeared in a single provision of the Declaration of Rights, article 1, section 3 of the Florida Constitution of 1838:
That the great and essential principles of liberty and free government may be recognized and established, we declare:
....
3. That all men have a natural and inalienable right to worship Almighty God according to the dictates of their own conscience; and that no preference shall ever be given by law, to any religious establishment, or mode of worship in this State.
The same unified, theistic formulation appeared in the Florida Constitution of 1865. The Constitution of 1868 initiated the separate treatment of free exercise and establishment that persisted in the Constitution of 1885:
5. The free exercise and enjoyment of religious profession and worship shall forever be allowed in this State, and no person shall be rendered incompetent as a witness on account of his religious opinions; but the liberty of conscience hereby secured shall not be so construed as to justify licentiousness or practices subversive of the peace and safety of the State.
....
23. No preference can be given by law to any church, sect, or mode of worship.
Declaration of Rights, §§ 5, 23, Fla. Const. (1868).
[4] There is no distinct claim here, however, that the challenged ordinance has the purpose or effect of impeding appellants' free exercise of religion.
[5] It is true, of course, that the ordinance mandates neither rest nor abstinence. Vendors of alcoholic beverages are free to sell food or other wares on Christmas, or to take stock of inventory. Clay Countians intent on imbibing eggnog on Christmas Day (or night) can acquire bourbon or rum ahead of time.