# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-623

_____

STATE OF FLORIDA, FLORIDA
DEPARTMENT OF HEALTH, CELESTE
PHILIP, M.D., M.P.H., in her
official capacity as Surgeon
General and Secretary of Health
for the State of Florida, FLORIDA
BOARD OF MEDICINE, JORGE J.
LOPEZ, M.D., in his official
capacity as Chair of the Florida
Board of Medicine, FLORIDA BOARD
OF OSTEOPATHIC MEDICINE, JOEL
B. ROSE, D.O., in his official
capacity as Chair of the Florida
Board of Osteopathic Medicine,
FLORIDA AGENCY FOR HEALTH
CARE ADMINISTRATION, and MARY
C. MAYHEW, in her official capacity
as Secretary of the Florida Agency
for Health Care Administration,

    Appellants,

    v.

GAINESVILLE WOMAN CARE, LLC,
d/b/a Bread and Roses Women's
Health Center, and MEDICAL
STUDENTS FOR CHOICE,

    Appellees.

_____

On appeal from the Circuit Court for Leon County.
Terry P. Lewis, Judge.

August 1, 2019

OSTERHAUS, J.

Appellees, Gainesville Woman Care, LLC, d/b/a Bread and Roses Women's Health Center, and Medical Students for Choice, have challenged an amendment to Florida's abortion law requiring 24 hours to pass between the time a patient is informed of the nature and risks of having an abortion and a physician's completion of the procedure. Ch. 2015–118, Laws of Fla.; § 390.0111(3), Fla. Stat. (2018). They assert that this 24-hour Law, on its face, violates the Florida Constitution's right of privacy provision, article I, § 23.

Based on the Florida Supreme Court's earlier decision to temporarily enjoin the 24-hour Law's enforcement, Appellees moved for final summary judgment and prevailed in the trial court. Since the temporary injunction phase of this case, however, the State has built a case that raises genuine issues of material fact. Among the remaining unresolved issues is the parties' dispute about the informed consent medical standard of care. Appellees' summary judgment motion asserted that the 24-hour Law deviates from the accepted standard of medical care in Florida by requiring the 24-hour delay and an unnecessary visit to a physician. But the State produced conflicting evidence from medical experts that the absence of such a decision-period after receiving information about the nature and risks of an abortion procedure and the procedure itself falls below the accepted medical standard of care. If the State's experts prove correct, that the 24-hour Law brings Florida in-line with the informed consent standard of care, then the law would pass muster under the Florida Supreme Court's decision approving informed consent in the abortion context. *See State v. Presidential Women's Ctr.*, 937 So. 2d 114 (Fla. 2006); *cf. Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 885-87 (1992) (approving a 24-hour waiting period under the United States Constitution). Because material facts still divide the parties, and all doubts about the existence of genuine issues of material fact

2

must be resolved in the State's favor for purposes of deciding Appellees' summary judgment motion, we reverse and remand for further proceedings.

## I.

The Woman's Right to Know Act, § 390.0111(3), Fla. Stat., generally prohibits abortions unless the physician obtains informed consent from a patient. In 2015, the Legislature amended the Act to require a 24-hour period between the time a pregnant woman receives the statutorily required informed consent information and completion of the procedure. § 390.0111(3)(a)1, Fla. Stat.; *see also Gainesville Woman Care, LLC v. State*, 210 So. 3d 1243, 1248 (Fla. 2017) (describing and quoting the 24-hour Law). The 24-hour Law has some exceptions. For example, a physician can forego the 24-hour period if there is a medical emergency, or if the patient is a victim of rape, incest, domestic violence, or human trafficking. § 390.0111(3)(a)1.c. & (3)(b), Fla. Stat.

Soon after the 24-hour Law was enacted, Appellees filed a complaint challenging its facial constitutionality. Appellees also filed a motion to temporarily enjoin the 24-hour Law from being enforced while the courts decided its challenge. The trial court granted the temporary injunction and appeals were taken. The Florida Supreme Court ultimately allowed the injunction based on the evidence presented by Appellees at the temporary injunction hearing, and because the State didn't offer any rebuttal evidence. *See Gainesville Woman Care*, 210 So. 3d at 1260-62 ("The State presented no evidence to indicate that the prior, neutral informed consent statute . . . is inadequate and requires the revisions enacted by the Legislature."). In view of the trial court's finding that the 24-hour Law "imposes a significant restriction on all women's fundamental right of privacy," the Court approved the injunction. *Id*. at 1264-65.

After the Florida Supreme Court's injunction decision, Appellees moved for final summary judgment on the merits of its constitutional challenge. Citing the Florida Supreme Court's temporary injunction decision, Appellees argued that the 24-hour Law cannot survive strict scrutiny and doesn't further a

compelling state interest. The State opposed final summary judgment by producing evidence supporting the law's constitutionality which hadn't been offered at the temporary injunction stage of the case.

The State argued that the 24-hour Law advanced its compelling interest in ensuring truly informed and voluntary consent and was tailored lawfully toward this goal. Its evidence included declarations from two apparently well-credentialed medical doctors asserting that a 24-hour waiting period is necessary to comply with the accepted medical standard of care for informed consent. Dr. Hector Vila is a board-certified anesthesiologist, who served on the Florida Board of Medicine; is a member of the American Society of Anesthesiologists, serving on the Ambulatory Surgery Committee; and is a member of the American Association for Accreditation of Ambulatory Surgery Facilities Board of Directors. Dr. Vila claimed extensive familiarity with the medical and professional standards for outpatient surgery. Dr. Vila's declaration stated that he is "not aware of another area of medicine, besides abortion, in which a nonemergency outpatient invasive procedure is performed without a prior visit and consultation." And he stated that the lack of a 24-hour waiting period "would fall below the acceptable medical standard of care."

The State's other medical declarant, Dr. Carlos Lamoutte, is a board-certified obstetrician-gynecologist. He stated that, other than abortion, he was "not aware of any non-emergency outpatient gynecological procedures that are routinely performed on a same-day basis." "As a matter of standard practice," when a patient considers "any sort of invasive or nontrivial procedure," Dr. Lamoutte consults with the patient and then schedules the procedure "for a later date." On occasion, Dr. Lamoutte has performed very minor procedures during the same appointment which he consulted the patient, but "[e]ven these extremely minor procedures are not done on a same-day basis in the ordinary course, but only in certain instances."

The State also filed the declaration of Priscilla K. Coleman, Ph.D., and others, addressing the mental health effects and negative outcomes associated with women not receiving adequate

time to reflect before making an abortion decision. Professor Coleman said that "waiting periods in other states are associated with improved mental health among females as evidenced by a significant drop in suicide rates."

Appellees did not counter the State's declarations with medical or other evidence but relied on the temporary injunction decision and legal arguments to support its summary judgment motion. The trial court granted Appellees' motion for final summary judgment. Its order declared the 24-hour Law to be facially unconstitutional and it permanently enjoined its enforcement. The court acknowledged the State to have a compelling interest in ensuring that that women's consent to abortion is fully informed and genuinely voluntary. But it found no remaining genuine issue of material fact as to whether the 24-hour Law could survive strict scrutiny. The trial court rejected the State's medical evidence because it didn't think that practitioners employed decision-periods for procedures comparable to abortion, except on a discretionary basis. The court also discounted the State's mental health evidence. It concluded that similar trauma exists with other medical procedures, so that the Legislature wasn't justified in "singling out abortions for the mandatory delay." The trial court did not state whether it was invalidating the law under Florida's traditional no-set-of-circumstances test for facial challenges. But it highlighted particular circumstances in which the law might not constitutionally apply—situations where women possess sophisticated medical knowledge, are certain of their decision, have suffered violence, live far away from a clinic, or have previously reviewed the required information—in finding the 24-hour Law to be too broad. The State timely appealed the final summary judgment order.

## II.

The standard of review of a final summary judgment is de novo. *Bowman v. Barker*, 172 So. 3d 1013, 1014 (Fla. 1st DCA 2015). "The movant must demonstrate conclusively that no genuine issue exists as to any material fact, and the court must draw every possible inference in favor of the party opposing summary judgment." *Id.* at 1015. Summary judgment should not be granted "unless the facts are so crystallized that nothing

5

remains but questions of law." *Id.* (quoting *Moore v. Morris*, 475 So. 2d 666, 668 (Fla. 1985)).

## A.

As discussed above, this case comes to us after the Florida Supreme Court approved a temporary injunction enjoining the 24-hour Law from taking effect. The Court approved the injunction "based on the evidence presented at the temporary injunction hearing" and the State's then-feeble case:

> In this case, the State failed to present any evidence that the [24-hour] Law serves any compelling state interest, much less through the least restrictive means, and, therefore, the trial court correctly concluded that there is a substantial likelihood that the [24-hour] Law is unconstitutional. Accordingly, we quash the decision of the First District below and remand this case back to the First District for instructions not inconsistent with this opinion.

*Gainesville Woman Care*, 210 So. 3d at 1265. At that point, the evidence consisted of a declaration by Appellees' temporary injunction-phase medical expert, Dr. Christine L. Curry, and nothing from the State. *Id.* at 1250. The Court repeatedly relied on Dr. Curry's assertions in reaching its decision to grant the injunction.

But now, at the current summary judgment phase of this case, it is the State that has submitted all of the medical and mental health evidence, while Appellees are standing pat. The updated posture of this case is important because "[t]he grant or denial of a temporary injunction does not ordinarily decide the merits of the case unless (1) the hearing is specially set for that purpose, [and] (2) the parties have had a full opportunity to present their cases." *Silver Rose Entm't, Inc. v. Clay Cty.*, 646 So. 2d 246, 248 (Fla. 1st DCA 1994). Neither of these factors apply here. Also, we must be wary of reading too much into the Florida Supreme Court's earlier decision because it focused on the State's lack of evidence. Its decision was based "only [on] the evidence before the trial court at the time it entered its temporary injunction order." *Planned*

6

*Parenthood of Greater Orlando, Inc. v. MMB Props.*, 211 So. 3d 918, 926 (Fla. 2017); *Vill. of N. Palm Beach v. S & H Foster's, Inc.*, 80 So. 3d 433, 436 (Fla. 4th DCA 2012) (recognizing that "the affirmance of a temporary injunction on appeal determines only that a proper showing was made at the time the injunction was applied for"). Furthermore, Appellees are no longer relying on any medical evidence. When Appellees were questioned at oral argument about the medical expert declaration that it presented at the temporary injunction hearing, upon which the Florida Supreme Court relied, they said they were "not relying on Dr. Curry's declaration now." And so, Appellees would have us apply the temporary injunction opinion against the 24-hour Law on summary judgment without any medical evidence supporting its challenge.

Our job now is to review whether genuine issues of material fact remain in the case that preclude final summary judgment. And, indeed, such fact issues remain. The medical standard of care issue is the most obvious example. Appellees began the "Undisputed Fact" section of their summary judgment motion by describing the medical standard of care and asserting that it doesn't mandate a delay between informing a patient of the nature and risks of having an abortion and completing the procedure. But the State's medical experts say the opposite. Dr. Vila stated that a less-than-24-hour waiting period "would fall below the acceptable medical standard of care." And Dr. Lamoutte said that he is "not aware of any non-emergency outpatient gynecological procedures that are routinely performed on a same-day basis." "As a matter of standard practice," he schedules invasive, nontrivial procedures for a later date. An amicus brief from a pediatricians' group and an association of obstetricians and gynecologists makes this same point: "The standard of care for non-emergency surgery is to wait at least 24 hours after providing informed consent before performing elective surgery in order to give the patient appropriate time for reflection." Brief of Amici Curiae Am. Coll. of Pediatricians & Am. Ass'n of Pro-Life Obstetricians & Gynecologists at 6. According to the State's case, it is only abortion providers within the medical profession that routinely perform invasive medical procedures on the same day that they provide initial consultations.

7

The physicians' declarations are supported by other mental health-related declarations filed by the State. Dr. Coleman stated, for example, that "waiting periods in other states are associated with improved mental health among females as evidenced by a significant drop in suicide rates." She cited studies that women who have abortions in the absence of a deliberative period are more likely to suffer depression, anxiety, post-traumatic stress, substance abuse, and suicidal behavior. Her statement was also supported by the amicus brief of the American College of Pediatricians and American Association of Pro-Life Obstetricians & Gynecologists, which recognized that adolescents who have abortions are particularly vulnerable to mental health-related trauma because of their relative immaturity. *Cf. Farmer v. State*, 268 So. 3d 1009, 1010 (Fla. 1st DCA 2019) (noting the view of the United States Supreme Court that "juveniles are different because of their immaturity, their lack of responsibility, their greater susceptibility to negative influences and pressure, and the fact that they have fewer fixed personality traits"). The importance of deliberating before choosing to have an abortion was also a feature of the declaration of Appellees' temporary injunction expert. The Florida Supreme Court quoted Dr. Curry's declaration that, in her experience, "whatever a woman's reasons for terminating a pregnancy, she makes the decision thoughtfully after much consideration and deliberation with those she includes in her process: her family, friends, and/or physician." *Gainesville Woman Care*, 210 So. 3d at 1250. For these reasons, the State's evidence supporting the 24-hour Law raises genuine issues of material fact. Rather than singling out and burdening abortion procedures with arbitrary requirements, the State's evidence indicates that the 24-hour Law brings abortion procedures in Florida into compliance with medical informed consent standards and tangibly improves health outcomes for women.

Conversely, Appellees have provided no evidence that conflicts with the State's medical and mental health evidence. Nor does this court have a basis on its own to discount the declarations of the State's medical and mental health experts addressing the standards of care applicable to their practices. *See* 766.103(3)(a)1., Fla. Stat. (defining medical consent in terms of whether it "was in accordance with an accepted standard of medical practice among members of the medical profession with similar training and

8

experience"); *Doctors Mem'l Hosp., Inc. v. Evans*, 543 So. 2d 809, 812-13 (Fla. 1st DCA 1989) (recognizing that under Florida law, "issues of informed consent are such that lay persons cannot determine through the use of their common knowledge that a breach of the standard of care occurred"). We agree with the trial court that ensuring "fully informed and genuinely voluntary" consent is a compelling state interest, *see Presidential Women's Ctr.*, 937 So. 2d at 114. And we reject the dissent's view that the Legislature is prohibited from enacting an informed consent standard that reflects the prevailing standard of medical practice among relevant members of the medical profession. Laws incorporating accepted medical practice standards are no novelty. *See, e.g.*, §§ 766.102(1) & (3) (establishing the prevailing professional standard of care as the key issue in medical malpractice actions), 766.102(3)(b) (memorializing the standard of care related to the presence of a foreign body), 766.103(3)(a)1. (requiring consent to be obtained in accordance with the "accepted standard of medical practice"), 945.6034(2) (requiring compliance with "the standard of care generally accepted in the professional health community" in the corrections context); ch. 2019–137, Laws of Fla. (requiring telehealth providers to abide by "the prevailing professional standard of practice").

Because the facts must be construed favorably to the non-movant State, and genuine issues of material fact remain at issue, we reverse and remand this matter to the trial court for additional proceedings.

## B.

In addition to the unresolved fact issues, the trial court's final summary judgment order evaluated Appellees' facial constitutional challenge using the wrong legal test. The order found fault with the 24-hour Law partly based on the hypothetical circumstances of women who have sophisticated medical knowledge, who are certain of the decision, who may have suffered violence, who live far from a clinic, or who have previously reviewed the required information. This mode of analysis didn't apply Florida's established test for assessing facial constitutional challenges. Women claiming particular harms from the 24-hour Law based on their specific circumstances may challenge the law's

9

application to them. But those would be as-applied constitutional challenges. No such challenge has been made here. For this facial challenge, the correct legal test is not whether the 24-hour Law violates the constitutional rights of some women in some circumstances, but whether it violates the rights of all women in all circumstances.

The Florida Supreme Court has recently reiterated that a no-set-of-circumstances test applies to facial constitutional challenges:

> In a facial challenge, [court] review is limited. We consider only the text of the statute, not its specific application to a particular set of circumstances. To succeed on a facial challenge, the challenger must demonstrate that *no set of circumstances* exists in which the statute can be constitutionally valid. Generally, legislative acts are afforded a presumption of constitutionality and we will construe the challenged legislation to effect a constitutional outcome when possible.

*Fraternal Order of Police, Miami Lodge 20 v. City of Miami*, 243 So. 3d 894, 897 (Fla. 2018) (emphasis added) (citations omitted); *see also Cashatt v. State*, 873 So. 2d 430, 434 (Fla. 1st DCA 2004).[*] And we discern this test to apply, not only because of its traditional application to facial challenges in Florida, but because the Florida Supreme Court applied it earlier in this case in evaluating Appellees' argument for a temporary injunction. That opinion explicitly evaluated the 24-hour Law's effect through the lens of "all women": "The trial court's finding that the [24-hour] Law

---

[*] We note that the United States Supreme Court has used a more challenger friendly "large fraction of relevant cases" test in some facial challenges to abortion statutes brought under the United States Constitution. *See, e.g.*, *Gonzales v. Carhart*, 550 U.S. 124, 167-68 (2007); *Casey*, 505 U.S. at 895. But this standard, which was briefly mentioned in the temporary injunction opinion, *Gainesville Woman Care*, 210 So. 3d at 1264, hasn't been adopted or used in challenges brought under Florida's Constitution.

imposes a significant restriction on *all women's* fundamental right of privacy, by its plain terms, is sufficient to support an injunction barring the application of the law." *Gainesville Woman Care*, 210 So. 3d at 1264-65 (emphasis added).

"Where an issue has been decided by the Supreme Court of the State, the lower courts are bound to adhere to the Court's ruling when considering similar issues, even though the court might believe that the law should be otherwise." *State v. Dwyer*, 332 So. 2d 333, 335 (Fla. 1976). Accordingly, the test for deciding Appellees' facial challenge is not whether the 24-hour Law can be lawfully applied to a particular set of facts. Rather, the test for facial challenges in Florida remains whether no set of circumstances exists in which the law is constitutionally valid.

## III.

Because disputed genuine issues of material fact remain, Appellees are not entitled to final summary judgment. We therefore VACATE the Final Judgment, and REVERSE and REMAND for further consideration of Appellees' facial constitutional challenge.

JAY, J., concurs; WOLF, J., dissents with opinion.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

WOLF, J., dissenting.

The trial court granted a motion for summary judgment determining that the mandatory 24-hour delay law (the Act or statute) was unconstitutional because the "State has not proffered evidence that raises any genuine issues of material fact sufficient to explain how a law that sweeps so broadly can be found to be the least restrictive means of serving any compelling state interest." I

agree with the trial court's conclusion and its finding that the statute "what's in it and what's not . . . belies the compelling nature of the state interest being advanced and demonstrates ambivalence, if not outright hostility, to the mandate that the least restrictive measures to be utilized to advance the interest." Uniquely treating abortions differently from other medical procedures and failing to present evidence that the statute is the least restrictive means to accomplish the purported goals of section 390.0111(3) renders the law unconstitutional. Discouraging people from exercising a constitutionally protected right does not constitute a compelling state interest.

FACTS

For a patient to give valid, informed consent to any medical treatment in Florida, the health professional must conform to an "accepted standard of medical practice among members of the medical profession" and provide the patient with information conveying three things: 1) the nature of the procedure; 2) the medically acceptable alternatives to the procedure; and 3) the procedure's substantial risks. § 766.103(3)(a)1.-2., Fla. Stat. (2016). This general informed consent law does not mandate that patients delay their care after receiving the required information or make an additional visit to the doctor. *See id.* Patients may receive this informed consent counseling at any time before their procedure, including on the same day as their scheduled procedure.

Florida's informed consent law specific to abortion largely mirrors this general informed consent statute. The abortion-specific law requires the physician to inform the patient of "[t]he nature and risks of undergoing or not undergoing" the abortion procedure; "[t]he probable gestational age of the fetus, verified by an ultrasound," which is relevant to the nature and risks of the procedure; and "[t]he medical risks to the woman and fetus of carrying the pregnancy to term." § 390.0111(3)(a)(1)a.-c., Fla. Stat.

The Act amends this pre-existing, abortion-specific informed consent law to require that a patient make a separate, medically necessary visit to her physician to receive exactly the same information described above, and then delay her abortion by at least 24 hours. § 390.0111(3)(a)1., Fla. Stat.; *see also Gainesville*

12

*Woman Care*, 210 So. 3d 1243, 1261 (Fla. 2017). Florida law subjects no other medical procedure to a mandatory delay.[1]

ANALYSIS

In *Gainesville Woman Care*, the court held that section 390.0111(3), Florida Statutes (2015), "implicates the Florida Constitution's express right of privacy" and, therefore, was subject to strict scrutiny and presumptively unconstitutional. 210 So. 3d at 1245. Thus, to uphold the law, the state must demonstrate a "compelling state interest" that the law serves or protects through the least restrictive means. *Id.* at 1246.

In *State v. Presidential Women's Center*, 937 So. 2d 114 (Fla. 2006), the court upheld the state's abortion informed consent statute, "the women's right to know," and specifically recognized that a patient's informed consent to medical treatment was a state interest. However, the court noted that the requirements of the abortion informed consent statute were comparable to the common law for other medical procedures and thus did not violate the constitution. *Id.* at 118.

There is, however, no other medical procedure that has a mandatory delay period after a patient has received the informed consent information. The trial court specifically stated in its order

---

[*] The Act contains two narrow exceptions. The first is for a woman who "presents to the physician a copy of a restraining order, police report, medical record, or other court order or documentation evidencing that she is obtaining the abortion because she is a victim of rape, incest, domestic violence, or human trafficking." § 390.0111(3)(a)(1)c., Fla. Stat. This exception does not apply to a woman who lacks documentation of these assaults.

The second exception is for a woman experiencing a "medical emergency." § 390.0111(3)(a), Fla. Stat. The term "medical emergency" is undefined, but the statute specifies that a woman may obtain care without delay only if "continuation of the pregnancy would threaten [her] *life*." § 390.0111(3)(b), Fla. Stat. (emphasis added).

13

the reasons proffered by the State for singling out abortion are not persuasive.

The State argues that it was justified in singling out abortions for these additional requirements because the standard protocol for other comparable medical procedures calls for a delay between an initial consultation and the procedure. In other words, other medical procedures have a *de facto* waiting period and there is no need to mandate it by law for them. This argument, however, does not address why other procedures are governed by general standards of care and a doctor's discretion while there is a mandated delay in this area.

The State did present some other evidence concerning why a waiting period would enhance informed consent. This other evidence included expert testimony that women might change their mind about having the procedure, women seeking an abortion are under a lot of stress and it is difficult to make a rational decision under stress, having an abortion without due deliberation may increase risk of anxiety, depression, suicide, and drug use, and significant numbers of women later regret the decision to have an abortion.

None of the State's evidence, however, proves that this is the least restrictive means of serving the statute's purported goal. Nor does it justify singling out abortions for the mandatory delay when no other medical procedure, including those with greater medical risks, are subject to a mandatory delay. Other medical procedures can be stressful and lead to regrets about the decision, which can cause anxiety, depression, and drug use. And this can happen regardless of the time taken to make the decision.

There is simply no evidence supporting the concept that information regarding abortion is more complex and needs more time to be understood versus other complex medical procedures. Absent such evidence, a restriction targeting a woman's right to choose suggests that the Act is based on nothing more than hostility toward the constitutionally protected abortion procedure. Thus, it is critically important for us to ensure that any regulation in this area is accomplished by the least intrusive means.

14

To overcome the presumption of unconstitutionality, the State bears the burden of showing that there is a sufficient "nexus between the asserted interests and the means chosen," and that the law is "narrowly tailored to achieve the stated interests." *State v. J.P.*, 907 So. 2d 1101, 1117 and 1119 (Fla. 2004). The lack of appropriate exceptions in the Act undermines the State's argument that it has utilized the least restrictive approach to advancing its purported compelling state interest.

The Act makes no exceptions for a woman who is certain of her decision, has sophisticated medical knowledge, has suffered violence but cannot prove it, is desperate to end her pregnancy, lives far away from the clinic, has been extensively counseled before arriving, has previously and recently received all the required information, or viewed an ultrasound the day before. The Act also requires a woman to receive the required information from a physician, face to face, instead of from any qualified medical professional via telephone, email, or any other more convenient method of communication.

If an informed consent is the true goal of the Act, it is unclear why the Act is so restrictive. Patients should be allowed to avoid two trips for face-to-face meetings with a physician. Previous dissemination by other means should be allowed. The disproportionate effect of two mandated visits on the economically disadvantaged is also a significant factor. These people may face job restrictions, child care restrictions, and transportation difficulties not faced by the more affluent.

Another important concern is that, even if her doctor, in good faith, advises that a delay might be adverse to her health, the Act requires the patient to delay the procedure. A law that forces a patient to delay medical care to the detriment of her health cannot be the least restrictive means of furthering any compelling state interest.

The Florida Supreme Court has held that restrictions on abortion are permitted *only* to the extent that they "safeguard" a woman's health, and even then, only in the second trimester of pregnancy. *In re T.W.*, 551 So. 2d 1186, 1193 (Fla. 1989). Indeed, the court struck the parental consent law at issue in *In re T.W.* in part because it "fail[ed] to make any exception for emergency *or*

15

*therapeutic abortions*," which was one of the ways in which that statute "fail[ed] to provide adequate procedural safeguards." *Id.* at 1196 (emphasis added). Similarly, in this case, the State has not proffered evidence that raises any genuine issues of material fact sufficient to explain how a law that sweeps so broadly can be found to be the least restrictive means of serving any compelling state interest.

I would affirm.

————————————————

Ashley Moody, Attorney General, Amit Agarwal, Solicitor General, Edward M. Wenger, Chief Deputy Solicitor General, and James H. Percival, Deputy Solicitor General, Tallahassee, for Appellants.

Autumn Katz, Center for Reproductive Rights, New York; Richard E. Johnson, Law Office of Richard E. Johnson, Tallahassee; Julia Kaye, American Civil Liberties Union Foundation, New York; and Benjamin James Stevenson, American Civil Liberties Union Foundation of Florida, Pensacola, for Appellees.